**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Luis Anthony RIVERA,**
**Defendant–Appellant.**

**Nos. 85–1768, 85–1771.**

United States Court of Appeals,
Tenth Circuit.

April 4, 1990.

Louis Vernell, North Miami Beach, Fla., for defendant-appellant.

Mervyn Hamburg, Appellate Section, Criminal Div., U.S. Dept. of Justice, Washington, D.C. (Roger Hilfiger, U.S. Atty., E.D.Okl., and Paul Hess, Asst. U.S. Atty., E.D.Okl., with him on the brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and McKAY, LOGAN, SEYMOUR, MOORE, ANDERSON, TACHA, BALDOCK, BRORBY and EBEL, Circuit Judges.

EBEL, Circuit Judge.

This case presents the issue of whether defendant Luis Anthony Rivera's convictions for various drug offenses should be reversed due to the cumulative effect of alleged deficiencies in the performance of government-appointed defense counsel, combined with the effect of the trial court's refusal to grant a pretrial continuance. Because we find no error in the performance of defendant's trial counsel nor in the trial court's denial of defendant's motion for a continuance, we have no occasion to apply the cumulative-error doctrine in this case. Further, we have concluded that the performance of defense counsel and the trial court's refusal to grant a pretrial continuance did not cause the defendant's trial to be fundamentally unfair. Therefore, we vacate the three-judge panel's judgment reversing defendant's convictions; we affirm the trial court's judgment in part; and we remand the case to the trial court in order to vacate defendant's two lesser-included conspiracy convictions.

## Facts

Defendant was convicted, in a jury trial, of thirteen drug offenses charged in two indictments. The first indictment charged defendant and six other named individuals with the following: (1) conspiracy to import cocaine, in violation of 21 U.S.C. §§ 952(a), 960, and 963; (2) importation of cocaine, in violation of 21 U.S.C. §§ 952(a) and 960; (3) conspiracy to possess cocaine with intent to distribute and conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; (4) possession of cocaine with intent to distribute and distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1); (5) conspiracy to travel in interstate and foreign commerce with the intent to import cocaine, to possess cocaine with the intent to distribute, and to distribute cocaine, in violation of 18 U.S.C. §§ 371 and 1952(a)(3); (6) traveling in interstate and foreign commerce with the intent to import cocaine, to possess cocaine with the intent to distribute, and to distribute cocaine, in violation of 18 U.S.C. § 1952(a)(3); and (7) engaging in a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848.

The first indictment concerned the alleged importation of approximately 460 pounds of cocaine from Columbia to an isolated airstrip in Talihina, Oklahoma, on July 1, 1983. It alleged that defendant arranged for someone to locate an appropriate airstrip and to arrange transport of the cocaine to Miami. The indictment described the purchases of the Cessna aircraft and two pickup trucks used to transport the cocaine and detailed the travels of the various participants in the days leading up to the July 1, 1983 importation. Several of the alleged perpetrators were arrested shortly after the cocaine was transferred from a Cessna 404 Titan aircraft to an awaiting pickup truck. Defendant was arrested on January 18, 1985, more than eighteen months later.

The second indictment concerned the alleged importation of approximately 400 pounds of cocaine from Columbia to Talihina, Oklahoma, on July 12, 1982, and its transport to Florida. The six counts in the second indictment were identical to counts I through VI in the first indictment. The second indictment did not contain a CCE count. All of the allegations in the second indictment related to the July 12, 1982 operation.

The trial court admitted evidence of two drug offenses not specifically charged in either indictment. The first transaction occurred in May 1983, when defendant allegedly contacted Cecil Ford, an indicted co-conspirator under the first indictment, and instructed him to travel from Florida to the

Denver, Colorado Airport to deliver five kilos of cocaine. Ford was allegedly paid $5,000 for the job.

The second transaction occurred approximately one week prior to the July 1, 1983 importation charged in the first indictment. Defendant allegedly instructed William Sebolt and Rogers Ariza, indicted coconspirators under the first indictment, to travel from Oklahoma to Milwaukee, Wisconsin, in order to pick up cocaine from a parked aircraft. They allegedly did so, placing the cocaine in a hidden compartment in a truck provided by defendant, and transported the cocaine to Florida. Upon delivering the cocaine, Sebolt and Ariza allegedly received cash payments of $5,000 and $10,000, respectively.

The prosecutor elicited extensive testimony as to these events and discussed them in both his opening statement and closing argument. *See* R.Supp.Vol. II at 126–27; R.Supp.Vol. IV at 479–87; R.Supp.Vol. V at 686–96, 751–55; R.Supp.Vol. VII at 1222–24. The prosecutor stated in his closing argument that the Denver and Milwaukee transactions were relevant to proving the CCE count. R.Supp.Vol. VII at 1222–23.

Defense counsel apparently learned of those transactions from the prosecutor shortly before trial. At the beginning of the trial, defense counsel moved to exclude evidence of them. *See* R.Supp.Vol. II at 97–106. The prosecutor acknowledged that the Denver and Milwaukee transactions had not been included in the indictment because the prosecution was not aware of them at the time the indictment was drafted. R.Supp.Vol. II at 99. Evidence of the Denver and Milwaukee transactions had not been presented to the grand jury that returned the indictments.

On January 24, 1985, six days after defendant was arrested, Gregory Meier was appointed to represent defendant. Meier filed discovery motions on January 28, requesting materials pursuant to Fed.R. Crim.P. 16, the Jencks Act (18 U.S.C. § 3500), and *Brady v. Maryland,* 373 U.S.

83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). R.Vol. I at 13–15; R.Vol. II at 8–10. Those motions were granted in part and denied in part. R.Vol. I at 19–22; R.Vol. II at 14–17. On February 27, 1985, Meier filed motions to withdraw as defendant's counsel, claiming an "irreconcilable conflict" with his client. R.Vol. I at 24; R.Vol. II at 19. That conflict apparently developed when Meier recommended a certain course of action during plea negotiations with which defendant disagreed. R.Supp.Vol. II at 8. Although Meier stated that he remained "ready and able" to represent defendant, Rivera had apparently "lost confidence" in him. *Id.* Meier's motions to withdraw were denied on February 28, 1985. R.Vol. I at 27; R.Vol. II at 21.

On March 8, 1985, another attorney, D.D. Hayes, visited with defendant, and Hayes filed formal entries of appearance on behalf of defendant on March 11. R.Supp. Vol. II at 4–5; R.Vol. I at 26; R.Vol. II at 22. On March 13, Hayes requested a continuance. R.Vol. I at 33–34; R.Vol. II at 28–29. The purpose of the continuance was to allow time for Hayes to examine the "voluminous" documents necessary to prepare Rivera's defense. R.Vol. I at 34; R.Vol. II at 29. Among the materials that Hayes allegedly had to review were "two transcripts of prior trials and numerous FBI reports." R.Vol. I at 34; R.Vol. II at 29.[1] Hayes also noted that he had already received "one box containing thousands of documents in the nature of [defendant's] business records from Miami, Florida" and he "anticipate[d] receiving several more boxes of such material." R.Vol. I at 34; R.Vol. II at 29. Hayes further asserted that he needed to master the "numerous technical details relating to aircraft" involved in this case, as well as "the normally complicated issues of a conspiracy type case." R.Vol. I at 34; R.Vol. II at 29. On March 14, 1985, the trial court entered minute orders denying the continuance requests. R.Vol. I at 36; R.Vol. II at 31.

---

**1.** The transcripts involved the trials of Alan Kaye and Rafael Gonzales, who were alleged to have been involved with defendant in some of the matters charged in the indictments against him.

On March 18, just prior to the beginning of jury selection for defendant's trial, Hayes renewed his motion for a continuance. R.Supp.Vol. II at 3. Hayes noted that he had still not received all of the documents from Miami that he anticipated using in preparing Rivera's defense. *Id.* He further argued that a continuance was necessary for the other reasons stated in his motion. *Id.* Hayes told the court that until he had agreed to take on defendant's case, he "had no idea of the magnitude of paper work and of the necessity of obtaining evidence from Miami, Florida." R.Supp.Vol. II at 5.

However, prosecutor Donn Baker told the court that during the week prior to trial, Hayes had worked "ten and twelve hours a day, and maybe more, each and every day on this case," and he had "abandoned his other law practice and devoted the last week [prior to trial] entirely to this matter and ... spent numerous hours at the jail talking to his client." R.Supp.Vol. II at 5–6. Baker further acknowledged that "if the truth be known, [Hayes] knows more about the Government's evidence than the prosecutor does." R.Supp.Vol. II at 6.

The trial court noted that Meier was still assigned to the case and that if defendant so desired, Meier would be directed to continue working on the case at government expense. R.Supp.Vol. II at 9. After Hayes stated that both he and defendant wanted Meier to remain on the case, the trial court denied Meier's motion to withdraw. R.Supp.Vol. II at 10. The court also denied the renewed motion for a continuance, although later, after the government had rested its case, the court did grant Hayes' request for a weekend continuance to enable him to prepare Rivera to testify. R.Supp.Vol. VI at 1002.

Defendant was convicted of all thirteen counts and was sentenced to a prison term of life plus 140 years. A divided three-judge panel reversed defendant's convictions. *United States v. Rivera*, 837 F.2d 906 (10th Cir.1988). The majority held that the trial court erred by allowing the government to introduce evidence concern-

ing the Denver and Milwaukee transactions to prove the CCE count in the first indictment. The majority also believed that Meier's preparation was questionable and was critical of the trial judge's refusal to grant a pretrial continuance. The majority stated:

> We do not here hold that the failure to grant the continuance, in isolation, *necessarily* constituted an abuse of discretion. Neither do we hold that Mr. Meier's questionable preparation before retention of Mr. Hayes *by itself* constituted ineffective assistance of counsel under the strict dictates of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), echoed in *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986). Rather, our holding is compelled by the *interaction* of these elements with each other and with the lack of notice of use of the uncharged offenses.... As discussed, one of the harms caused by the lack of notice is the inability to prepare a defense to meet such evidence. That harm was exacerbated in this case by the general impediments to preparing a defense caused by Mr. Meier's lack of early preparation and Mr. Hayes' late entry. Mr. Hayes was still frantically preparing Mr. Rivera's defense during the trial and could not devote "free time" to investigation of the surprise Denver and Milwaukee evidence.
>
> In short, the record convinces us that the hampered representation in this case due to the unique interaction of these three elements permeated the trial and thereby undermined the fundamental fairness guaranteed Mr. Rivera by the due process clause of the fifth amendment. We therefore hold that justice requires retrial not only on the CCE count ... but also on the other counts charged in these indictments.

*United States v. Rivera*, 837 F.2d at 923–24 (citations and footnotes omitted) (emphasis in original).

Thus, the majority's conclusion that there was reversible error was based on the combination of the denial of defendant's motion for continuance, Meier's lack

of diligence, and the admission of the evidence concerning the Denver and Milwaukee transactions. The government petitioned for rehearing en banc. This court granted the government's petition, but directed that the parties only address the following issue:

> whether the Sixth Amendment and Due Process Clauses of the United States Constitution require that an indictment charging a continuing criminal enterprise must allege all offenses to be used at trial, thus showing that facts concerning such offenses were presented to the grand jury, in order for evidence of such offenses to be admissible at trial.

*United States v. Rivera*, 847 F.2d 660, 660 (10th Cir.1988) (en banc). After oral argument before the en banc court, supplemental briefing was ordered on the following additional question:

> Is it sufficient for an indictment that charges a violation of 21 U.S.C. § 848 simply to allege in the language of the statute "a continuing series of violations," or do the 5th and 6th Amendments of the United States Constitution (including the right to indictment clause of the 5th Amendment) require the indictment to describe the essential facts constituting each violation relied upon to establish the series of violations?

*United States v. Rivera*, 874 F.2d 754, 754–55 (10th Cir.1989) (en banc).

The en banc court was evenly divided on both questions. As a result, that portion of the panel decision disapproving the use of the uncharged transactions to support a CCE conviction was withdrawn. The en banc opinion concluded:

> Accordingly, our judgment on this issue, found at 837 F.2d [at] 914–921 (headnotes 6–20), is without precedent and is not binding on the trial court in this case. The panel opinion otherwise remains undisturbed by the *en banc* court.

*Id.* at 755 (citation omitted).

On June 14, 1989, the government filed a motion seeking clarification of the judgment. Noting that the majority panel opinion was based on the cumulative effect of three matters, the government asked whether this court "intended the panel order reversing appellant's conviction to stand on the basis of the combination of the two remaining points that the panel had identified." Appellee's Supp.Br. at 4 (filed Sept. 5, 1989).

On July 28, 1989, this court granted the government's motion for clarification and stayed further proceedings in the district court. The court requested simultaneous briefing from the parties on the following issue:

> Please address the issue of "cumulative error," *see United States v. Troutman*, 814 F.2d 1428, 1456 (10th Cir.1987), and its application to the "unique interaction" holding presented in this case, as described by the government's June 14, 1989, Motion to Clarify the Judgment. Particularly, the briefs and argument should address the appropriateness of reversal of this defendant's conviction based on the cumulative effect or unique interaction of factors not in and of themselves constituting error.

*United States v. Rivera*, Nos. 85–1768, 85–1771 (10th Cir. July 28, 1989) (order granting rehearing en banc).

The issue was framed as it was to reflect the fact that the panel had not found that defendant's counsel was ineffective in violation of the Sixth Amendment standard announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), nor had it found that the trial court's denial of defendant's motion for a continuance was an abuse of discretion. Although the panel undeniably criticized the performance of defendant's counsel and was similarly critical of the refusal to grant a continuance, the panel did not characterize those matters as error. Rather, it was only when the panel considered all three factors together that it found reversible error.

Now, without the challenge to the adequacy of notice of the Denver and Milwaukee offenses before us,[2] we must determine

---

**2.** Defendant argues that our May 19, 1989 en banc opinion did not "completely nullif[y]" the

whether the cumulative effect of the alleged deficiencies in legal representation and the failure to grant a continuance amounts to reversible error. We hold that it does not, and accordingly we affirm defendant's convictions on all but two counts. We remand to vacate two of defendant's conspiracy convictions because they are lesser-included offenses of the CCE violation.[3]

## Discussion

### I. Cumulative Error

The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. The purpose of a cumulative-error analysis is to address that possibility. *See, e.g., United States v. Wallace,* 848 F.2d 1464, 1475 (9th Cir.1988) ("Although each of the above errors, looked at separately, may not rise to the level of reversible error, their cumulative effect may nevertheless be so prejudicial to the appellants that reversal is warranted"); *United States v. Smith,* 776 F.2d 892, 899 (10th Cir.1985); *United States v. Canales,* 744 F.2d 413, 430 (5th Cir.1984).

Such an analysis is an extension of the harmless-error rule, which is used to determine whether an individual error requires reversal. The federal harmless-error provisions are found in 28 U.S.C. § 2111 and Fed.R.Crim.P. 52(a). Section 2111 provides that the federal appellate courts are to

examine "the record without regard to errors or defects which do not affect the substantial rights of the parties." Rule 52(a) counsels federal courts to disregard "[a]ny error, defect, irregularity or variance which does not affect substantial rights." The policy underlying those provisions is clear. "[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986); *see also United States v. Hasting,* 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1980–81, 76 L.Ed.2d 96 (1983). "The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *Delaware v. Van Arsdall,* 475 U.S. at 681, 106 S.Ct. at 1436 (citation omitted).

The Supreme Court has articulated different harmless-error standards, depending upon whether the error is of constitutional dimension. A non-constitutional error is harmless unless it had a "substantial influence" on the outcome or leaves one in "grave doubt" as to whether it had such effect. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).[4] Until *Chap-*

---

3. *See* note 21, *infra.*

4. Except possibly for minor, technical errors for which there is no reasonable possibility that the verdict could have been affected, the government ordinarily has the burden of proving that a non-constitutional error was harmless. *Bacino v. United States,* 316 F.2d 11, 14 (10th Cir.) (if it is "within the range of reasonable possibility

issue of notice because the panel decision had "also concluded that the *actual* notice of the government's intent to use evidence of those uncharged offenses at trial was inadequate." Appellant's Supp. Br. at 6 (filed Sept. 1, 1989) (emphasis in original). However, the portion of the panel opinion discussing the need for actual notice is contained in headnotes 16–20, *see Rivera,* 837 F.2d at 920–21, which is included among the headnotes that the May 19 en banc opinion held to be "without precedent." *Rivera,* 874 F.2d at 755.

[that a non-constitutional error] may have affected the verdict, the accused does not have the burden of showing an adverse effect"), *cert. denied,* 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963); *see also Kotteakos,* 328 U.S. at 765, 66 S.Ct. at 1248 ("But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected"). That is consistent with the legislative history of § 269 of the former Judicial Code (28 U.S.C. § 391, *repealed by* Act of June 25, 1948, ch. 646, 62 Stat. 869, 998), the precursor to § 2111 and Fed.R.Crim.P. 52(a), which provides that " '[i]f the error is of such a character that its natural effect is to prejudice a litigant's substantial rights, the burden of sustaining a verdict will ... rest upon the one who claims under it.' " *Kotteakos,* 328 U.S. at 760, 66 S.Ct. at 1245 (quoting H.R.Rep. No. 913, 65th Cong., 3d Sess.

*man v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), "it had been supposed that errors of constitutional dimension could never be regarded as harmless error." 3A C. Wright, *Federal Practice and Procedure* § 855, at 325 (2d ed. 1982). In *Chapman,* the Supreme Court held that a federal constitutional error can also be held harmless, but only if the court is "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828.[5] The harmless-beyond-a-reasonable-doubt standard announced in *Chapman* applies to "most constitutional violations." *Hasting,* 461 U.S. at 509, 103 S.Ct. at 1980. However, there are still some constitutional errors which can never be dismissed as harmless. *Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460 (1986).

▪ A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless. Unless an aggregate harmlessness determination can be made, collective error will mandate reversal, just as surely as will individual error that cannot be considered harmless. The harmlessness of cumulative error is determined by conducting the same inquiry as for individual error— courts look to see whether the defendant's substantial rights were affected. *See United States v. Kartman,* 417 F.2d 893, 894, 898 (9th Cir.1969).[6]

▪ However, just as harmless-error analysis is utilized only to determine whether actual *error* should be disregarded, a cumulative-error analysis aggregates only actual errors to determine their cumulative effect.[7] Individual rulings frequently will have an adverse effect on a party, but unless that party can demonstrate that the ruling was an error, reversal would not

1); *see also* 3A C. Wright, *Federal Practice and Procedure* § 854, at 304 (2d ed. 1982). The legislative history of § 2111 and Rule 52(a) indicates that adoption of those provisions was not intended to effect any substantive change from § 269 of the former Judicial Code. *See* H.R. Rep. No. 352, 81st Cong., 1st Sess., *reprinted in* 1949 U.S.Code Cong. Serv. 1248, 1254, 1272 (stating that Section 2111 is intended to incorporate § 269 of the former Judicial Code); Fed.R. Crim.P. 52(a) advisory committee's note (stating that Rule 52(a) is a "restatement of existing law," and then quoting § 269 of the former Judicial Code).

**5.** The prosecution bears the burden of proving that a constitutional error was harmless beyond a reasonable doubt. *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828.

**6.** If any of the errors being aggregated are constitutional in nature, then the harmless-beyond-a-reasonable-doubt standard announced in *Chapman* should be used in determining whether the defendant's substantial rights were affected. Any lesser standard would potentially denigrate the protection against constitutional error announced in *Chapman.*

**7.** We use the term "error" generically to refer to any violation of an objective legal rule. Therefore, the fact that § 2111 refers to "defects" as well as errors, and the fact that Rule 52(a) refers to "defect[s], irregularit[ies], [and] vari-

ance[s]" in addition to errors, does not alter our conclusion that cumulative-error analysis does not apply to non-errors. Neither § 2111 nor Rule 52(a) defines the terms defect, irregularity or variance. However, the case law suggests that in order to have a defect, irregularity, or variance, there must be some violation of constitutional, statutory, or common law, or a violation of an administrative regulation or an established rule of court. *See, e.g., Lemke v. United States,* 346 U.S. 325, 326, 74 S.Ct. 1, 98 L.Ed. 3 (1953) (treating as an "irregularity" the premature filing of a notice of appeal in violation of former Fed.R.Crim.P. 37(a)(2) (current Fed.R.App.P. 4(b))); *United States v. Green,* 847 F.2d 622, 624 (10th Cir.1988) (same); *United States v. Mendel,* 578 F.2d 668, 670 (7th Cir.) (treating as a "defect" a violation of former Fed.R.Crim.P. 41(c) (subsequently amended)), *cert. denied,* 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 422 (1978); *United States v. Bolzer,* 556 F.2d 948, 950 (9th Cir.1977) (treating as a "variance" a violation of the well-established rule prohibiting variation between the charge of the indictment and the proof offered at trial). The general legal definitions of those terms also supports that conclusion. *See Black's Legal Dictionary* 376 (5th ed. 1979) (defining "defect" as "[t]he want or absence of some *legal requisite*" (emphasis added)); *id.* at 744 (defining irregularity as the "[v]iolation or nonobservance of *established rules and practices*" (emphasis added)); *id.* at 1392–93 (defining variance as "[a] discrepancy or disagreement between two instruments or two allegations in the same cause,

be warranted. Impact alone, not traceable to error, cannot form the basis for reversal.[8] The same principles apply to a cumulative-error analysis, and we therefore hold that a cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors. *See United States v. Smith*, 776 F.2d at 899; *see also United States v. Barshov*, 733 F.2d 842, 852 (11th Cir.1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 904, 83 L.Ed.2d 919 (1985).[9]

Permitting the effect of "non-errors" to be cumulated in order to reverse a conviction would vest nearly uncontrolled discretion in the appellate courts. There is a substantial body of constitutional, statutory, and common law which defines the various types of error that can lead to reversal of a defendant's criminal conviction. The discretion of an appellate court to reverse a verdict is limited by those legal rules, which demarcate the boundaries between error and non-error. Before an appellate court may conclude that an impropriety amounts to a reversible error, it must determine that there was a violation of an established legal standard defining a particular error.[10]

However, the discretion of a court applying a cumulative-error analysis in the

absence of actual error would not be similarly controlled. In that situation, a court would be able to consider the cumulative effect of any incidents that the court finds troubling, without reference to any objective legal standard. As a result, decisions by appellate courts in such situations would become unpredictable. Moreover, appellate courts likely would be flooded with appeals from criminal defendants demanding a new trial based only upon the cumulative effect of many rulings which may have contributed to a conviction, but which do not amount to error.[11]

Here, defendant has failed to prove that there were any errors in the conduct of his trial. Because defendant's challenge to the government's use of evidence of the Denver and Milwaukee transactions was denied by an equally-divided vote of this court, and because we have vacated that portion of the panel opinion that addressed the adequacy of the notice given to defendant of those transactions,[12] that issue is not now before this court. The panel decision explicitly declined to hold that either of the remaining two incidents—defense counsel's allegedly inadequate preparation and the trial court's failure to grant a continuance—were error. Therefore, in the absence of any action by

which ought *by law* to be entirely consonant" (emphasis added)).

**8.** The only possible exception is the holistic analysis conducted to determine whether the entire trial was so fundamentally unfair that defendant's due process rights were violated. That analysis is discussed in Section II, *infra*.

**9.** The only case that defendant cites in support of his argument that cumulative-error analysis can be applied in the absence of error appears to have been based on the right to a fair trial guaranteed by the Due Process Clause, not on an application of the harmless-error rule. *United States v. McLain*, 823 F.2d 1457 (11th Cir. 1987). We address defendant's due process rights in Section II, *infra*.

In any event, defendant incorrectly argues that the court in *McLain* did not characterize as errors the individual improprieties that formed the basis for that court's decision to order a new trial. Defendant's Supp. Br. at 5 (filed Sept. 1, 1989). Although it is true that the court in *McLain* did not analyze each of the individual improprieties to explicitly determine whether they constituted errors, the court did repeatedly

refer to the incidents as errors. *See McLain*, 823 F.2d at 1459, 1462.

**10.** For example, a denial of a continuance is reviewed under an abuse of discretion standard, *see, e.g., United States v. West*, 828 F.2d 1468, 1469 (10th Cir.1987), and ineffective counsel claims are governed by the standard announced in *Strickland v. Washington, supra*.

**11.** We recognize that, in determining whether an individual error is harmless, a reviewing court must consider the effects of that particular error in light of the entire record. *See, e.g., United States v. Hasting*, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983); *Coleman v. Saffle*, 869 F.2d 1377, 1389 (10th Cir.), *petition for cert. filed*, No. 89–5737 (U.S. Oct. 2, 1989). However, the entire record is reviewed only to enable the court to understand the true impact of *that particular asserted error*. The review is not performed for the purpose of adding to that impact the impact of other unrelated rulings of which the defendant may complain, but which do not amount to error.

**12.** *See* note 2, *supra*.

this court en banc to recharacterize those matters as errors, there is no holding of error, no error to cumulate, and no occasion to apply a cumulative-error analysis. We turn, then, to an analysis of whether defense counsel's preparation or the trial court's refusal to grant a pretrial continuance should be characterized as error.[13]

### A. Ineffective Counsel

 In order to find that the defendant was denied effective assistance of counsel as guaranteed by the Sixth Amendment, we would have to find that the conduct of defendant's counsel "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). In *Strickland,* the Supreme Court adopted a two-part test to determine whether the Sixth Amendment has been violated. A defendant must show: (1) "that counsel's performance was deficient," with reference to "prevailing professional norms," and (2) "that the deficient performance prejudiced the defense." *Id.* at 687–88, 104 S.Ct. at 2064–65. Prejudice is shown "by demonstrating that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068).

 We approach this review with considerable restraint. As the Supreme Court in *Strickland* noted:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. We also keep in mind that the defendant bears the burden of proving that his counsel's performance was both deficient and prejudicial within the meaning of *Strickland. Kimmelman,* 477 U.S. at 381, 106 S.Ct. at 2586.

 Here, defendant has failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *see also Kimmelman,* 477 U.S. at 381, 106 S.Ct. at 2586; *United States v. Jones,* 852 F.2d 1275, 1277 (10th Cir.1988). Defendant's allegation of ineffective assistance of counsel centers largely upon the allegation that his first counsel, Mr. Meier, did not adequately prepare for trial. However, Meier told the trial court that he "spent many, many hours in consultation with Mr. Rivera and in consultation with the Government going over the Government's discovery material" and that he spent "a substantial number of hours" working on the case. R.Supp.Vol. II at 8. In addition, approximately ten days before the trial began, defendant retained the services of a second attorney, Mr. Hayes. Not only did Hayes apparently devote vir-

---

**13.** Because the panel decision declined to characterize either of those matters as error, we could simply accept that characterization without reexamining the record. If we were to follow that approach, the subsequent discussion concerning the allegation of inadequate counsel and failure to grant a pretrial continuance could be avoided. However, in addition to asking the parties to address the appropriateness of cumulating non-error, the en banc question also referred the parties to *United States v. Troutman,* 814 F.2d 1428 (10th Cir.1987). In *Troutman,* the court conducted a review of the entire record in order to determine whether the defendant was denied his constitutional right to a fair

trial. The analysis performed in *Troutman* is more akin to the fundamental-fairness analysis discussed in Section II, than to a traditional cumulative-error analysis. In order to perform the analysis employed in *Troutman,* we must review the entire record to determine whether defendant's trial was fundamentally fair. As a result of that review, we are able to confirm that there was no error below either in the assistance that defendant received from his counsel or in the refusal of the trial court to grant his request for a continuance. We therefore affirm the panel's refusal to characterize either of those matters as error.

tually his undivided attention to preparing for the trial after he was hired,[14] but the trial court refused to allow Meier to withdraw as well. Thus, throughout the trial, defendant had the full-time services of two defense attorneys. Measured strictly by the amount of legal resources committed to the defense, it would be difficult to conclude that defendant did not have access to the legal assistance required by the Sixth Amendment.

An objective review of the performance of defendant's two attorneys confirms that the Sixth Amendment's requirements were satisfied. Counsel spent numerous hours interviewing the defendant before trial, and pretrial discovery motions were filed to obtain documents from the government pursuant to Fed.R.Crim.P. 16, the Jencks Act, and *Brady v. Maryland*. Counsel reviewed voluminous materials, including transcripts of two previous trials of other persons involved in many of the same transactions that were at issue in defendant's trial. Our review of the record reveals that both counsel participated actively in the trial and that their examination, cross-examination, and legal arguments were more than adequate. Thus, we conclude that there is no basis in the record for concluding that Meier's pretrial preparation was deficient under the Sixth Amendment standard announced in *Strickland*.

In addition, defendant has failed to demonstrate that he was prejudiced by his counsel's allegedly inadequate preparation. As noted above, in preparation for trial, Meier filed discovery motions requesting materials pursuant to Fed.R.Crim.P. 16, the Jencks Act, and *Brady v. Maryland*. However, defendant argued in his supplementary brief to the three-judge panel that had Meier filed a motion for a bill of particulars and additional pretrial discovery motions or a motion to compel discovery, the government's plan to use evidence of the Denver and Milwaukee transactions in proving its case would have come to light much earlier, and a stronger defense could have been planned. Appellant's Supp.Br. at 10–11 (filed July 11, 1986). Defendant also claimed that Meier should have filed pretrial motions to dismiss and pretrial motions in limine to exclude the evidence of the Denver and Milwaukee incidents. *Id.* at 10. Although defendant apparently was not notified of the government's plan to use the Denver and Milwaukee incidents until just before the trial began, defense counsel became aware of the fact that the government knew about those incidents "three or four days before the trial started," when they received a copy of a "302" report. R.Supp.Vol.V. at 689.[15]

At trial, defendant responded to the government's introduction of evidence concerning the Denver and Milwaukee transactions by denying any involvement. R.Supp. Vol. VII at 1,048–49. The transactions were not particularly complicated, and defendant has failed to show how his response might have differed had he received earlier notification of the government's plan to introduce evidence of them. In the absence of such proof, it cannot be said that defendant has established that he had inadequate time to respond.

■■ Defendant also noted that Meier failed to file motions to suppress. Appellant's Supp.Br. at 10 (filed July 11, 1986). However, defendant has cited only two instances in which his counsel allegedly erred in failing to file motions to suppress, and neither resulted in prejudice to him. *Id.* at 3, 10 (citing R.Supp.Vol. V at 833, 843; R.Supp.Vol. VI at 876–78.) The first instance concerned the admission into evidence of photographs of cocaine positioned

---

**14.** As noted earlier, Hayes allegedly worked "ten and twelve hours a day, and maybe more, ... on this case," and "he abandoned his other law practice and devoted the last week [prior to trial] entirely to this matter." R.Supp.Vol. II at 5–6.

**15.** A 302 report is an FBI agent's formal account of a witness interview filed on the FBI's Interview Report Form FD-302. *See United States v. Harris*, 543 F.2d 1247, 1249 (9th Cir.1976). Defendant testified that he acquired knowledge of the fact that the government was aware of the Denver and Milwaukee offenses "about two days" before the trial began. R.Supp.Vol. VII at 1,049.

next to the duffel bags from which the cocaine was seized. Defense counsel objected at trial to the admission of those photographs on the ground that the government had not demonstrated that a warrant had been issued authorizing the search of the duffel bags. R.Supp.Vol. V at 831. However, the record indicates that defense counsel later withdrew the objection after the government showed that a valid search warrant had been obtained. R.Supp.Vol. V at 846.

The second instance involved several items of physical evidence (a Social Security card, a birth registration card, a driver's license, and a letter) that the government wanted to introduce to show that defendant had false identification with him at the time of his arrest. Because the government improperly failed to produce that evidence in response to defendant's discovery motion, the court sustained defendant's motion in limine. R.Supp.Vol. VI at 877.[16] Thus, Meier's failure to file suppression motions was not prejudicial to defendant.

▮ Defendant further argued to the three-judge panel that Meier "did not raise possible double jeopardy or due process arguments." Appellant's Supp.Br. at 20 (filed July 11, 1986). However, defendant has not identified the particular due process arguments that his counsel failed to raise, and the only double jeopardy argument available to defendant concerned his convictions for the CCE violation and the two lesser-included conspiracy offenses. It was not a violation of the Double Jeopardy Clause to charge and try defendant in a single trial for both the CCE count and the lesser-included conspiracy counts. *See United States v. Stallings,* 810 F.2d 973, 975–76 (10th Cir.1987); *United States v.*

*Dickey,* 736 F.2d 571, 596–97 (10th Cir. 1984), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). And, because we are remanding the case to vacate the convictions for the lesser-included conspiracy offenses, defendant has not been prejudiced.[17]

▮ Finally, the performance of defendant's counsel "must be considered in light of the strength of the government's case." *Eggleston v. United States,* 798 F.2d 374, 376 (9th Cir.1986). Here, the government presented 32 witnesses (including defendant's coconspirators, his former girlfriend, several law enforcement officials, and various disinterested bystanders) and introduced numerous documents in support of its case-in-chief. Defendant attempted to show that he operated a legitimate brokerage business, that he lived modestly and in fact was experiencing financial difficulties, and that his meetings with the coconspirators were either purely coincidental or were part of his legitimate activities as a broker in the purchase and sale of aircraft. However, the substantial number of records that defendant did introduce failed to rebut the government's overwhelming case-in-chief. When, as here, the prosecution has an overwhelming case, "there is not too much the best defense attorney can do." *United States v. Katz,* 425 F.2d 928, 930 (2d Cir.1970) (Friendly, J.); *see also United States v. Decoster,* 624 F.2d 196, 210 (D.C. Cir.) (en banc) (plurality opinion), *cert. denied,* 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 311 (1979).

▮ In sum, defendant has failed to prove that his counsel's performance was either deficient or prejudicial. Therefore, defense counsel committed no error in the course of representing defendant at trial.[18]

---

**16.** The government later was permitted to use that evidence in the course of cross-examining defendant. R.Supp.Vol. VII at 1,103–07, 1,183.

**17.** *See* Section III, *infra.*

**18.** Defendant's ineffective counsel claim before the three-judge panel was also based on Meier's failure to request a detention hearing or to appeal the denial of bail reduction. Appellant's Supp.Br. at 18 (filed July 11, 1986). Meier had requested a continuance so that he could pre-

pare for the hearing required by 18 U.S.C. § 3142(f) concerning the necessity of pretrial detention. Section 3142(f) authorizes a continuance of up to five days without requiring a showing of good cause. On Thursday, January 24, 1985, the magistrate asked whether defendant wanted the full five days to prepare for the hearing, and Meier stated that he would "get back with the court clerk's office or Your Honor on Monday [January 28]." R.Supp.Vol. I at 15. The magistrate stated that he would grant the five-day continuance unless a shorter period

### B. Failure to Grant a Continuance

 Defendant has similarly failed to offer sufficient proof that the trial court erred in refusing to grant his pretrial motion for a continuance. The failure to grant a motion for a continuance can amount to error only if it constitutes an abuse of discretion. *United States v. West*, 828 F.2d 1468, 1469 (10th Cir.1987); *United States v. Ortiz*, 804 F.2d 1161, 1167 (10th Cir.1986); *United States v. Bradshaw*, 787 F.2d 1385, 1392 (10th Cir.1986). "[B]road discretion must be granted trial courts on matters of continuances ..." *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). A trial judge's decision to deny a motion for a continuance constitutes an abuse of discretion only if the denial was "arbitrary or unreasonable and materially prejudiced the [defendant]." *West*, 828 F.2d at 1469. Whether a denial of a motion for a continuance is arbitrary or unreasonable depends upon an examination of a number of factors, including:

> [1] the diligence of the party requesting the continuance; [2] the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; [3] the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; [4] the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance.

*West*, 828 F.2d at 1470 (numbering added).

 Applying the four factors discussed in *West* to the facts of this case, we do not find an abuse of discretion. Of those four factors, defendant has satisfied clearly only the second one—the likelihood that a continuance would accomplish the purpose underlying the articulated need for a delay.[19]

Defendant has failed to offer sufficient proof to support a finding that any of the other factors discussed in *West* have been satisfied. In applying the first factor, the diligence of the party requesting the continuance, we note that defendant had trial counsel for almost six weeks prior to the request for a continuance and that the request for additional time was made only five days prior to the date on which the jury trial was scheduled to begin. Admittedly, the request was made shortly after defendant's second counsel, Hayes, had entered his appearance. However, we cannot overlook the fact that Meier had acted as defendant's counsel for a considerable time and that he continued representing the defendant throughout the trial. If Hayes had not entered the case, it would not have been an abuse of discretion to refuse to grant a continuance because of Meier's tardiness in requesting a delay, and we do not see how the addition of a second attorney should place the defendant in a better position.

The third factor concerns the inconvenience caused by the continuance. Of course, any continuance granted practically on the eve of trial inevitably will disrupt the schedules of the court, the opposing party, and the witnesses who have been subpoenaed or who have voluntarily arranged their schedules to attend the trial.[20] When, as here, a jury trial is involved, there is additional potential inconvenience to jurors and to the court. In addition, the motions for continuance did not specify the amount of additional time needed to pre-

---

was later requested. R.Supp.Vol. I at 16. Meier apparently did not follow up on his promise to schedule a detention hearing, and the magistrate did not arrange for a hearing. We do not believe that Meier's failure to insist that the magistrate hold a detention hearing by itself warrants a finding of ineffective counsel under *Strickland*. Similarly, we cannot conclude that Meier's failure to appeal the denial of bail reduction rises to the level of a *Strickland* violation.

**19.** The continuance was requested in order to give Hayes more time to examine defendant's business records and other materials. Granting the continuance would have accomplished that purpose.

**20.** There were a large number of witnesses in this case who might have been inconvenienced by a change in the trial schedule. As noted above, the government presented 32 witnesses, many of whom came from out-of-state.

pare adequately. Because of defendant's failure to specify the additional time needed, the resulting uncertainty as to the extent to which the continuance would have inconvenienced the government, its witnesses, and the court must be resolved against defendant.

 The fourth factor set forth in *West* requires an adequate demonstration of the need for a continuance. Defendant has failed to meet his burden of showing that substantial favorable evidence would have resulted from a more intensive review of the business records. *See United States v. Siegel*, 587 F.2d 721, 728 (5th Cir.1979). Reversal for failure to grant a continuance is appropriate only if it "materially prejudiced" defendant. *West*, 828 F.2d at 1469. In determining whether reversal is warranted, "[b]y far the most important factor to consider ... is the defendant's need for a continuance and the prejudice resulting from its denial." *Id.* at 1471.

Just as the record does not support a finding of prejudice under *Strickland*, a finding of "material prejudice" as a result of the district court's refusal to grant a continuance is similarly not warranted. As noted earlier, the defendant made no showing at trial nor has he made any specific allegation on appeal as to precisely what would have been discovered from the documents if he had been granted a continuance. Although defendant received many of the documents that he was seeking before trial, he was still receiving documents during the trial. That undoubtedly imposed an added burden on defense counsel, although, as we noted before, the fact that defendant had the services of two counsel during the trial should have eased that burden considerably. Defendant has failed to make any showing that the failure to grant a continuance prevented him from introducing any documents that would have been sufficiently important to his defense so as to constitute material prejudice.

Similarly, there was no showing that the failure to grant a continuance resulted in defendant's trial counsel being inadequately prepared. The issues at trial were not so complex that the need for a continuance would have been obvious, particularly since defense counsel had the advantage of having the transcripts of two previous trials concerning many of the same events. Further, the testimony shows that defendant's counsel, particularly Hayes, worked very hard to prepare prior to trial, and the record reveals that they were prepared and that the defense was competently presented.

In addition, the trial court later did accommodate defense counsel's need for additional time. On March 21, 1985, Hayes asked the court to recess for the weekend at the conclusion of the government's case so that Hayes would have adequate time to prepare his defense. R.Supp.Vol. V at 668. Hayes noted that during the trial he was receiving records from Miami which he was reviewing at night and that some of the records contained what he considered to be exculpatory information. R.Supp.Vol. V at 668–69. The trial court deferred ruling on Hayes' request until the conclusion of the government's case. R.Supp.Vol. V at 670. The government rested its case on Friday, March 22, 1985, in the late morning. R.Supp.Vol. VI at 963. Hayes reiterated the need for a continuance before the defendant began his testimony. R.Supp.Vol. VI at 972. Following a recess, Hayes called two minor witnesses, Stephen Lee Finigian and Jerry Thomason, for very brief testimony. The trial court then recessed until Monday, March 25, 1985, over the government's objection, in order to allow defendant's counsel the additional time that they had requested to prepare for defendant's examination. R.Supp.Vol. VI at 1,002. In light of the above evidence, a finding of "material prejudice" is unwarranted.

The decision of whether to grant a continuance rests within the sound discretion of the trial court. We cannot say, on the record before us, that the trial court abused that discretion.

We thus conclude that the panel opinion correctly declined to characterize either the performance of defendant's counsel or the trial court's refusal to grant a continuance

as error. Because there was no error in the trial, there is no occasion for us to employ a cumulative-error analysis in order to determine whether defendant's substantial rights were affected.

## II. Fundamental Fairness

■ The Due Process Clause of the Fifth Amendment protects against denials of fundamental fairness that are " 'shocking to the universal sense of justice.' " *United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973) (quoting *Kinsella v. United States ex rel. Singleton,* 361 U.S. 234, 246, 80 S.Ct. 297, 303, 4 L.Ed.2d 268 (1960)). *See also Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941) ("As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice").

Courts have based a finding of fundamental unfairness on the cumulative impact of two or more errors. *See Cooper v. Sowders,* 837 F.2d 284, 288 (6th Cir.1988); *Walker v. Engle,* 703 F.2d 959, 968 (6th Cir.), *cert. denied,* 464 U.S. 951, 962, 104 S.Ct. 367, 396, 78 L.Ed.2d 327, 338 (1983); *cf. United States v. Troutman,* 814 F.2d 1428, 1456 (10th Cir.1987) (concluding, after a review of the record, that there was no cumulative error and that the defendant therefore was not denied his constitutional right to a fair trial). Courts have also found fundamental unfairness when error is considered in conjunction with other prejudicial circumstances within the trial, even though such other circumstances may not individually rise to the level of error. *See Taylor v. Kentucky,* 436 U.S. 478, 487 & n. 15, 98 S.Ct. 1930, 1936 & n. 15, 56 L.Ed.2d 468 (1978) (cumulative effect of "potentially dangerous circumstances" caused by prosecutor's closing argument and trial court's "skeletal" instructions, when combined with the error of failing to instruct on the presumption of innocence, led to a conclusion that the trial violated the due process guarantee of fundamental fairness); *United States v. Diharce–Estrada,* 526 F.2d 637, 642 (5th Cir.1976) ("Based upon the combination of error and preju-

dicial circumstances recited, this court is left with the definite and firm conviction that [the defendant] did not receive a fair trial").

■ However, even in those cases where other prejudicial circumstances not denominated as error are considered, the linchpin of the analysis seems to be that an error was committed which, when considered with other circumstances, led to a fundamentally unfair trial. We need not explore in this case the outer parameters of when prejudicial circumstances, which do not individually constitute error, might contribute to or cause a finding of fundamental unfairness because it is clear in this case that the defendant was not subjected to a fundamentally unfair trial. Attempting to define the elements of what constitutes a fundamentally unfair trial would, in any event, likely end in failure because a fundamental-fairness analysis is heavily dependent upon the peculiar facts of an individual trial. As a result, the constitutional guarantee of a fundamentally fair trial cannot be defined with reference to particularized legal elements, which would limit the discretion of courts to determine whether a trial was fundamentally unfair. Precisely because a fundamental-fairness analysis is not subject to clearly definable legal elements, however, we must approach such analysis with considerable self-restraint. "Courts should tread gingerly when faced with arguments" concerning "the 'fundamental fairness' component of the Fifth Amendment's Due Process Clause," which should be reserved for "the most serious cases, which truly shock the conscience as well as the mind." *United States v. Penn,* 647 F.2d 876, 880 (9th Cir.) (en banc) (reversing district court's ruling that Due Process Clause required the suppression of certain evidence), *cert. denied,* 449 U.S. 903, 101 S.Ct. 276, 66 L.Ed.2d 134 (1980).

■ Based on our review of the entire record, we cannot conclude that defendant was deprived of his constitutional right to a fair trial. This was not a particularly complicated case, and defense counsel's job was facilitated by the availability of tran-

scripts of the prior trials of Alan Kaye and Rafael Gonzales concerning many of the same events. As discussed in Section I, the record indicates that Hayes and Meier performed more than adequately at trial. Defendant has failed to show how the outcome of the trial would have been altered, even if his counsel had filed the additional motions that he now suggests should have been filed, and even if the trial court had granted the continuance that he requested. Defense counsel vigorously cross-examined the government's witnesses and introduced numerous documents in an attempt to rebut the government's case-in-chief. In addition, the trial judge, who was concerned with maintaining fairness throughout the proceedings, granted defendant a weekend continuance so that he could prepare his testimony. The fact that the jury disagreed with defendant's version of the facts, as it was justified in doing in light of the record before it, cannot form the basis for a conclusion that defendant's trial was fundamentally unfair.

### III. Resentencing

■ The trial judge sentenced defendant to the maximum allowable term under each count in both indictments, with each term to run consecutively, resulting in a life sentence without parole, plus 140 years. R.Supp.Vol. VIII at 16–18. The government concedes on appeal that the trial judge erred in failing to treat the drug conspiracy charges under 21 U.S.C. §§ 846 and 963 as lesser-included offenses of the continuing criminal enterprise charge. *See* Appellee's Br. at 27–30 (filed Dec. 2, 1985). We agree. *See United States v. Stallings,* 810 F.2d at 975; *United States v. Dickey,* 736 F.2d at 596–97.[21] On remand, the trial judge should vacate both the convictions and the sentences for the lesser-included conspiracy offenses. *United States v. Stallings,* 810 F.2d at 975–76.

The three-judge panel's judgment overturning defendant's convictions is VACATED. The district court's judgment is AFFIRMED IN PART and REVERSED IN PART, and the case is REMANDED to the district court to vacate the two lesser-included conspiracy convictions.

McKAY, Circuit Judge, concurring in part and dissenting in part:

At footnotes 2 and 12 of the court's opinion, it concludes that the effect of late notice of the Denver and Milwaukee offenses is not before us. That conclusion not only is unwarrantedly technical (based on the pagination of the panel opinion) but also ignores the panel's express reference to the tardy notice (as opposed to the need to include the crimes in the indictment on which this court is evenly divided) when it wrote: "Rather, our holding is compelled by the *interaction* of these elements with each other and with the lack of notice of use of the uncharged offenses examined in section I." *United States v. Rivera,* 837 F.2d 906, 923–24 (10th Cir.1988). I think the panel clearly considered the two crimes in two different contexts: sufficiency of the indictment and opportunity to prepare. I consider the tardy notice issue to be part and parcel of cumulative error analyses. The court seems tangentially to consider this part of the issue as a part of its segmented analysis of the effective assistance of counsel issue.

I also think the *en banc* court's view of the panel opinion on the issue of cumulative error reads the panel opinion differently than I do. What the panel recognized is that, by their very nature, timeliness of notice, preparation of counsel, and time to prepare are interdependent and cannot be fairly separated. Incompetence is not the only basis for finding that counsel was ineffective. The role of the court and the

---

**21.** Defendant's convictions under the first indictment for conspiracy to import cocaine (in violation of 21 U.S.C. §§ 952(a), 960, and 963) and for conspiracy to possess cocaine with intent to distribute cocaine and to distribute cocaine (in violation of 21 U.S.C. §§ 841(a)(1) and 846) are lesser-included offenses of the CCE count. The CCE count specifically incorporates the importation and possession-with-intent-to-distribute counts found in the first indictment. Counts I and III of the first indictment allege a conspiracy to import and a conspiracy to possess with intent to distribute. Those conspiracy counts require proof of the same elements as does the CCE count and therefore constitute lesser-included offenses.

prosecution in precluding a fair opportunity to prepare can give rise to a deprivation of effective assistance of counsel. The same components also can make up a fair analysis of abuse of discretion in not granting a continuance. The panel opinion merely recognizes this interrelationship. I am of the view that the court's opinion is excessively pigeonhole-like in its approach to these interrelated issues, and I cannot join it.

That said, the court's examination of the probable impact of these trial problems has led me to reconsider my prior judgment. I am now persuaded that I previously inadequately considered the necessary role of prejudice in determining that the errors should result in reversal. The court's discussion of prejudice fully sets forth the facts and inference which support my revised judgment. I therefore concur in the court's judgment that this case should not be reversed on the basis of even the accumulative effect of what I consider to be errors in failing to give counsel a fair opportunity to prepare. I also agree that resentencing is necessary. I persist in my view that the indictment on the CCE count was defective for the reasons I previously stated in that part of the panel opinion vacated by virtue of this court being equally divided on that issue. I would reverse that part of the conviction in this case.