**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4557

MELIANE JOANN MONTAGUE,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief Judge.
(CR-97-179-BO)

Argued: October 27, 1999

Decided: January 7, 2000

Before WIDENER and MOTZ, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Arthur Charles Zeidman, FEDERAL PUBLIC DEFEND-
ER'S OFFICE, Raleigh, North Carolina, for Appellant. Thomas B.
Murphy, Assistant United States Attorney, Raleigh, North Carolina,
for Appellee. **ON BRIEF:** William Arthur Webb, Federal Public
Defender, Robert H. Hale, Jr., Assistant Federal Public Defender,
Raleigh, North Carolina, for Appellant. Janice McKenzie Cole,
United States Attorney, Anne M. Hayes, Assistant United States
Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Meliane Montague was indicted, along with Edith Peterson, on three counts of making material false statements to the government, and aiding and abetting, in violation of 18 U.S.C.A.§ 1001 (West 1976 & Supp. 1999), 18 U.S.C. § 2 (1994), and one count of conspiracy to do the same in violation of 18 U.S.C.A. § 371 (West 1966 & Supp. 1999). After a jury trial, Montague was convicted on all four counts and sentenced to concurrent terms of twenty-four months imprisonment for each count. Montague appeals her conviction. We reverse and remand the case for a new trial.

I

During the period covered by the indictment, March 30, 1994, to September 12, 1995, Montague and Peterson were employees of the United States Postal Service (USPS) at the Brentwood Station Post Office in Raleigh, North Carolina. Montague was the station manager, and Peterson was a window clerk. One of Peterson's duties was to sell stamps to the public. This prosecution arose from the process by which these sales were audited.

When the post office issued stamps to a window clerk to sell, they were recorded on a USPS Form 17. Each clerk was then held responsible for the stamps issued to him or her. Audits were conducted periodically to ensure that the clerks' stamp sales and stamp stock balanced out. During such an audit, both the clerk and a supervisor were required to count the stamps one by one. Each then listed the types and numbers of stamps on a separate USPS Form 3294. If the clerk and supervisor agreed in the results of their respective counts, then each would sign the forms and keep a copy. If the clerk and supervisor did not initially agree, then they would conduct additional counts until they agreed on the contents of the stamp stock.

2

The investigation in this case was precipitated by a burglary at the Brentwood Station Post Office on September 12, 1995. Postal inspectors called to the scene found the office ransacked. Montague informed the inspectors that the only items stolen were football tickets, food stamps, and approximately $80,000 in redeemed stamp stock. Redeemed stamp stock consists of old denomination stamps that are taken back from clerks after a postal rate increase.

Postal inspectors noted that items of greater value--such as current stamp stock, postal money orders, and two money order imprinting machines--were not taken. They also concluded that damage to a door frame in the post office had been caused from the inside, and there was no evidence of forced entry. A manager from another post office had begun a surprise audit of Brentwood Station four days before the burglary, and she had planned to return to complete it. All of these factors led postal inspectors to believe that the burglary was an "inside job."

Upon further investigation, inspectors found that $70,000 of the $88,000 in redeemed stamp stock that was reported stolen had been turned in by Peterson. This led Postal Inspector Angela Ellison to focus her investigation on Montague and Peterson. Inspector Ellison testified that $70,000 in stamp stock was "a very high amount for any one clerk to have turned in." J.A. 158-59.

Inspector Ellison conducted a full audit of the stamps that were issued to Peterson and the stamps inventories counted on USPS 3294 forms that Montague and Peterson filed together. Inspector Ellison found that on December 3, 1993, Montague and Peterson indicated on a USPS Form 3294 that Peterson possessed 59 $9.95 stamps. On March 30, 1994, Montague and Peterson indicated on a USPS Form 3294 that Peterson possessed 526 $9.95 stamps. According to the post office records, however, Peterson had been issued no $9.95 stamps in the interim and therefore could not have had more than 59 stamps. Inspector Ellison found similar discrepancies with respect to $95 and $115 coils of stamps and books of stamps on USPS 3294 forms filed by Montague and Peterson on January 25, 1995, and July 14, 1995. Inflating the value of stamp stock in a clerk's possession can cover up thefts of money or stamps. These discrepancies were the basis of

3

the three false statement counts and the conspiracy count in the indictment.

At trial, counsel for Montague elicited from Inspector Ellison that, as part of her investigation, she examined the bank accounts of Montague and Peterson to determine whether any unusual activity had taken place. Counsel attempted to elicit from Inspector Ellison that she found no deposits of unusually large sums of money in Montague's or Peterson's accounts. The district court interrupted this questioning, stated that it was not relevant, and asked the prosecutor if he was going to allow it to continue. The prosecutor then made an objection, which the court sustained.

In presenting its case, the defense called as a witness Beverly Marriot, a customer service supervisor at Brentwood Station. Counsel for Montague first questioned Marriot about the procedures for disposing of redeemed or obsolete stamp stock at Brentwood Station. The district court stopped the questioning, called counsel to the bench, and inquired about the relevance of this line of inquiry. Counsel for Montague argued that he was attempting to establish that the redeeming procedures were confusing and had changed often in order to explain the large amount of redeemed stamp stock reportedly in Peterson's possession. The district court ruled that this line of questioning was irrelevant to the charges on trial.

Defense counsel also questioned Marriot about the staffing conditions at Brentwood Station. She testified that Brentwood Station was busy, that Montague managed three other stations, and that Montague was short of supervisors for significant time periods between 1993 and 1995. When Marriot was asked to tell the jury about this short-handedness, the district court interrupted her answer and ruled that evidence of understaffing at Brentwood Station was irrelevant. In doing so, the court told the jury: "That's all you have to decide is whether or not those statements were false in the three charged Counts, 2, 3, 4, and whether or not they entered into an unlawful agreement to violate the law by making false statements and committed an overt act in that respect." J.A. 229. In a proffer to the district court submitted by Montague's attorney, Marriot stated that, between 1993 and 1995, there were periods when Brentwood Station lacked adequate supervisory personnel due to sick leave and work detail

4

assignments. The Marriot proffer further stated that these supervisors worked under Montague and had authority to conduct Postal Form 3294 audits, that as a result Montague at times was required to work 12-hour days, and that Montague at times did not have the time or supervisory personnel to conduct timely audits.

II

Montague appeals the decision of the district court to exclude three items of testimony as irrelevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "A district court's evidentiary rulings are entitled to substantial deference and will not be reversed absent a clear abuse of discretion." United States v. Moore, 27 F.3d 969, 974 (4th Cir. 1994). A clear abuse of discretion is considered clearly erroneous. Evidentiary rulings are also subject to harmless error review. Fed. R. Crim. P. 52(a). "[I]n order to find a district court's error harmless, we need only be able to say `with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" United States v. Heater, 63 F.3d 311, 325 (4th Cir. 1995) (citations omitted).

The first item excluded by the district court was testimony of Postal Inspector Ellison regarding the bank accounts of Montague and Peterson. Although it was not charged in the indictment, it was clear from the evidence presented at trial that the object of the alleged conspiracy to make false statements on postal inventory forms would have been to mask the theft of large amounts of money or stamps from the post office for profit. Just as testimony by Inspector Ellison that there were unexplained deposits in the bank accounts of either Montague or Peterson would have been probative of such a conspiracy, testimony that there was no unusual banking activity would have made the existence of such a conspiracy less likely. The exclusion of this testimony, together with the court's statement that the jury need only find that the audit statements were false, was clearly erroneous.

The district court next excluded testimony by Marriot about the procedures by which the post office redeemed obsolete stamps. Evi-

5

dence that these procedures were confusing and changed often could have explained the large amount of redeemed stock attributed to Peterson, which was one of the factors that led Inspector Ellison to investigate her stamp inventories. The testimony also would have made the existence of accounting mistakes on the part of Montague more likely. The prosecution was required to prove that Montague made the material false statements "knowingly and willfully." 18 U.S.C.A. § 1001(a) (Supp. 1999). If the discrepancies in stamp inventories were the product of mistakes by Montague, the required element of intent would not be present. In excluding this portion of Marriot's testimony, the ruling of the district court was clearly erroneous.

Finally, the district court prevented Marriot from explaining that, during the relevant period, Brentwood Station had a shortage of supervisors who could conduct stamp audits, Montague was working 12-hour days, and she was not able to conduct timely audits. Far from being irrelevant, all of these factors would make a conclusion that Montague made mistakes in completing the stamp audits more likely. Once again, the proffered evidence was relevant to the element of intent. The district court overlooked this when it stated that the only relevant question was whether the postal forms in question contained material false statements. In excluding this evidence that was relevant to intent, the district court's ruling was clearly erroneous.

These errors in excluding relevant testimony at trial were not harmless. In conducting a harmless error analysis, a reviewing court considers "`all that happened without stripping the erroneous action[s] from the whole.'" Heater, 63 F.3d at 325. If more than one error occurred at trial, then all errors are aggregated to determine whether their cumulative effect mandates reversal. United States v. Rivera, 900 F.2d 1462, 1470-71 (10th Cir. 1990) (describing cumulative error analysis).

Montague's main theory of defense at trial was that the discrepancies found on postal audit forms were not the result of intentional actions on her part but the product of understaffing and confusing procedures for turning in redeemed stamp stock. The district court excluded three items of testimony that would have been relevant to this defense. Taken individually, each of the errors by the district

6

court may have been harmless in the whole context of the trial. Taking them together, however, we cannot conclude that the jury's "`judgment was not substantially swayed by the error[s].'" Heater, 63 F.3d at 325.

We reverse Montague's conviction and remand the case to the district court for further proceedings.

REVERSED AND REMANDED

7