7 F.3d 1045
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jorge Alberto FIGUEREDO, also known as George, Defendant-Appellant.
 No. 92-1142.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 15, 1993.
 
 Before LOGAN, MOORE and BRORBY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Defendant Jorge Alberto Figueredo appeals his conviction for conspiracy with intent to distribute cocaine and to distribute cocaine, in violation of 21 U.S.C. 846, 841(a)(1) and 841(b)(1)(A).
 
 
 3
 In prosecuting the case the government relied primarily upon the testimony of two witnesses to prove defendant was a member of a cocaine distribution conspiracy. One was Harry Navarro, who testified that he was a coconspirator who bought large quantities of cocaine from defendant over a six-month period which Navarro then resold. The other was FBI Agent Michael Blair who with Navarro's assistance after his arrest recorded one telephone call between Navarro and defendant, attempted to record another but was unsuccessful because of an equipment failure, and followed Navarro to a rendezvous with defendant in a K-Mart parking lot where he and other agents arrested defendant while he was transferring two kilos of cocaine to Navarro. The only issues on appeal concern the admissibility of Blair's testimony about what he learned from conversations with Navarro concerning the modus operandi of the conspiracy.
 
 
 4
 Two portions of Blair's testimony were objected to at trial. That testimony was:
 
 
 5
 [After describing Navarro as wearing a pager at the time of a telephone call from defendant]
 
 
 6
 Q. And did he [Navarro] receive any pages during your presence?
 
 
 7
 A. Yes, he did.
 
 
 8
 Q. Can you describe that to the jury?
 
 
 9
 A. The page that he received on his digital pager was a telephone number followed by a prearranged code of 02.
 
 
 10
 Q. Now, when you say prearranged code, what was your understanding?
 
 
 11
 A. My understanding from Mr. Navarro is that the code--sorry.
 
 
 12
 MR. MEDLIN: I object to hearsay as to what Mr. Navarro told this agent. That would be hearsay, Your Honor.
 
 
 13
 ....
 
 
 14
 A. I was personally told by Mr. Navarro that he uses the code 02 when corresponding with digital pagers back and forth between himself and Mr. Figueredo.
 
 
 15
 I Supp. R. 63-64.
 
 
 16
 Q. Can you tell the Court and the jury what your observations were regarding how faultless which this particular transaction was set up and carried out?
 
 
 17
 A. Upon my first actual face-to-face meetings with Mr. Navarro, we met at a Denny's restaurant in Houston, Texas, over a cup of coffee. He explained to me how--
 
 
 18
 MR. MEDLIN: Your Honor, I object to what Mr. Navarro explained to him over coffee at Denny's.
 
 
 19
 THE COURT: What date are we talking about, please, agent?
 
 
 20
 THE WITNESS: Approximately the 9th of October [sic], I believe.
 
 
 21
 ....
 
 
 22
 THE WITNESS: Mr. Navarro described to me the scenario that he uses when conducting cocaine transactions with someone that he knew as George. I recorded or reduced these scenarios to writing and later after the consensual monitored telephone calls were made and arrangements were made for Mr. Figueredo or George and Mr. Navarro were to be arranged--I knew that one of two scenarios would be worked and that would be either at the K-Mart or at the Kroger store. At the last telephone conversation, it was arranged for the meeting to take place at the K-Mart. So I put that plan into motion, and it took place probably within two or three minutes of the planned time which is very, very unusual, which would indicate to me that this scenario had been worked previous to this.
 
 
 23
 Id. at 75-76.
 
 
 24
 In both instances the court made essentially the same response to defense counsel's objections:
 
 
 25
 THE COURT: Right. Now, ladies and gentlemen, you may consider this as between the two people who were part of the conversation not as to the defendant. Until and unless I instruct on the contrary. You may consider it as to the two parties of the conversation at this point. Do you understand that, please. Let's go ahead, please.
 
 
 26
 Id. at 64; see also id. at 76.
 
 
 27
 Defendant asserts that the statements objected to were hearsay not within the coconspirator exception of Fed.R.Evid. 801(d)(2)(E), because they were made by Navarro to the agent after his arrest (and hence termination of Navarro's coconspirator status) and not in furtherance of the conspiracy. We agree with defendant that the coconspirator exception, which would be applicable to Navarro's testimony about defendant's statements made during the course of the conspiracy, is inapplicable to the objections made to Blair's testimony. But we hold that if any error was committed by the district court in admitting Blair's testimony it was harmless.
 
 
 28
 First, we note that the district court recognized that insofar as Blair was recounting statements made by Navarro, that Blair's testimony was hearsay. We believe, however, that the court's limiting instruction to the jury in denying suppression was relatively clear that the jury was not to consider the remarks for the truth of statements made by Navarro, but as Blair's reconstruction of his conversation with Navarro.
 
 
 29
 Second, assuming Blair's testimony was hearsay that should not have been admitted, Navarro took the stand, corroborated Blair's testimony, and was subject to cross-examination by defense counsel. Navarro's availability as a witness, therefore, satisfies any concern that admission of this hearsay testimony amounted to a violation of the Confrontation Clause. California v. Green, 399 U.S. 149, 158-59 (1970). In the absence of error of a constitutional dimension, we consider whether the error was harmless under the nonconstitutional standard of Fed.R.Crim.P. 52. A nonconstitutional error is harmless if it does not have "substantial influence" on the verdict or "leave[ ] one in 'grave doubt' as to whether it had such effect." United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir.1990) (en banc) (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)). We have reviewed the record on appeal and do not believe the challenged portions of Blair's testimony "substantially influenced" the jury, nor do we have "grave doubts" that this testimony had that effect. Indeed, defendant himself testified that the 02 code was used for at least one page between Navarro and himself. III R. 58.
 
 
 30
 Finding no reversible error, we AFFIRM.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrine of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3