**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 4 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERT DON DUCKETT,

      Petitioner - Appellant,

v.

      No. 00-6292

MIKE MULLIN, Warden, Oklahoma
State Penitentiary,

      Respondent - Appellee.

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(No. CIV-98-26-L)**

---

Mark L. Henricksen (Lanita Henricksen, with him on the briefs), Henricksen &
Henricksen, El Reno, Oklahoma, for Petitioner-Appellant.

Jennifer B. Miller, Assistant Attorney General (W.A. Drew Edmondson, Attorney
General of Oklahoma, with her on the briefs), Oklahoma City, Oklahoma, for
Respondent-Appellee.

---

Before **KELLY** , **LUCERO** , and **MURPHY** , Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

      Robert Don Duckett, an Oklahoma state prisoner convicted of first-degree

murder and sentenced to death, appeals the district court's denial of his petition for a writ of habeas corpus. This court granted Duckett a certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253(c) with respect to five of his claims of legal error: (1) that the conduct and comments of the state prosecutor deprived him of a fair trial; (2) that trial counsel's failure to investigate and present mitigating evidence deprived him of effective assistance of counsel; (3) that the federal district court erred by refusing to provide him funds with which to retain an expert witness for the evidentiary hearing conducted by the court; (4) that the admission into evidence of a videotape of the murder scene deprived him of a fair and impartial jury; and (5) that the application of the "murder to avoid arrest" aggravating circumstance deprived him of a fair trial. Having studied this matter closely, we conclude that Duckett is not entitled to habeas relief on any of these claims. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we affirm.

**I**

On October 18, 1988, John Howard was found dead in his apartment in Oklahoma City, having been severely beaten with a fireplace poker and the wooden stand of an ashtray. His hands and feet were bound with a wire hanger, and there were blood stains and spatters throughout the apartment. Howard's keys and car were missing, along with over $200 from the convenience store that

he managed.

A few weeks prior to this incident, Howard picked up Duckett—an escapee from prison who had been convicted of robbery by force—while Duckett was hitchhiking on an interstate in Oklahoma City. Howard befriended Duckett, helped him obtain employment at the State Fair and later at his convenience store, and offered to let Duckett stay with him at his apartment.

On November 1, 1988, Duckett was arrested in Clear Creek, Arizona, while driving Howard's car. He had switched the license plates on Howard's car with those of another vehicle in the parking lot of Howard's apartment complex. Police found in the car a blood-stained jacket and jeans, along with bank bags from Howard's convenience store.

During questioning by Oklahoma authorities, Duckett admitted that he and Howard had fought and exchanged five or six blows, but that when Duckett left, Howard was on his feet and breathing. He had bound Howard's hands, Duckett explained, in order to keep Howard from coming after him. Duckett also told authorities that he had been gang-raped in prison and that he and Howard had been fighting over a homosexual pass that Howard had made toward him.

The Oklahoma Court of Criminal Appeals ("OCCA"), summarizing much of the crime-scene evidence, noted that

> [the victim's] ankle was broken and he had been struck at least 19 separate times. Among various other head wounds, his skull was

-3-

fractured in numerous places and his left eye was ruptured and punctured. There were blood spatters both high and low on the walls, indicating that [Duckett] continued to beat him after he was on the ground and incapable of running away. Blood smears on the victim's jeans indicate that he either was trying to crawl away or was dragged through the blood. Blood spatters on the windows and the closed curtains indicate that [Duckett] beat the victim with the curtains open, and then continued to beat the victim after stopping to close the curtains. The victim's hands and feet were bound with wire, and he had, at one point, been gagged with a rolled up sock and a bandanna.

Duckett v. State, 919 P.2d 7, 13 (Okla. Crim. App. 1995).

In June 1989, Duckett was tried before a jury and convicted of first-degree murder, larceny of an automobile after prior conviction of a felony, and concealing stolen property after prior conviction of a felony. During the sentencing phase of the trial, the jury found the existence of five aggravating circumstances:

> 1) that Mr. Duckett was previously convicted of a violent felony; 2) that the murder was especially heinous, atrocious or cruel; 3) that the murder was committed for the purpose of avoiding arrest or prosecution; 4) that the murder was committed while Mr. Duckett was serving a sentence of imprisonment; and 5) that Mr. Duckett constituted a continuing threat to society.

Id. at 12–13. The jury recommended the death penalty for the murder conviction, and in July 1989, the trial judge accepted this recommendation and sentenced Duckett to death.

Duckett filed a direct appeal alleging thirty-two propositions of error. Although the OCCA found several trial errors, it affirmed Duckett's convictions

and sentence. After the United States Supreme Court denied his petition for a writ of certiorari, Duckett filed an application for post-conviction relief before the OCCA, urging six propositions of error. That application was denied. In May 1998, Duckett filed a petition for a writ of habeas corpus in federal district court, seeking relief on nearly forty grounds. After conducting an evidentiary hearing on several of these claims, the district court denied the petition. Duckett thereupon sought a COA in this court with respect to a number of issues, and we granted his request with respect to the five claims noted above.

## II

Because Duckett filed his petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the provisions of AEDPA are applicable to his case. See Lindh v. Murphy, 521 U.S. 320, 326–27 (1997). Pursuant to AEDPA, we may not grant habeas relief on behalf of a person in custody pursuant to the judgment of a state court with respect to any claim adjudicated on the merits in state court unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under the "unreasonable application" clause, "a federal

-5-

habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

## A

Duckett contends that the conduct and comments of the state prosecutors, District Attorney Robert Macy and Assistant District Attorney ("ADA") Brad Miller, deprived him of his constitutional right to a fair trial and due process of law. He points to over a dozen separate instances of alleged prosecutorial misconduct whose "cumulative effect" was allegedly prejudicial, "even if the single errors do not entitle the Petitioner to relief." (Appellant's Br. at 11.) Alternatively, he suggests that the prosecutors "knowingly and egregiously" infected his trial with such misconduct, destroying the integrity of the proceedings and making this the "unusual case" in which a showing of prejudice is unnecessary. (Id. at 11, 28.)

1. Prosecutorial Misconduct and Prejudice

Allegations of prosecutorial misconduct are mixed questions of fact and law that we review de novo. Fero v. Kerby, 39 F.3d 1462, 1473 (10th Cir. 1994). Ordinarily, a prosecutor's misconduct will require reversal of a state court conviction only where the remark sufficiently infected the trial so as to make it

fundamentally unfair, and, therefore, a denial of due process. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Nonetheless, "when the impropriety complained of effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair." Mahorney v. Wallman, 917 F.2d 469, 472 (10th Cir. 1990) (citing DeChristoforo, 416 U.S. at 643). Inquiry into the fundamental fairness of a trial requires us to examine the effect of any misconduct within the context of the entire proceedings. DeChristoforo, 416 U.S. at 643. In order to view any prosecutorial misconduct in context, "we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution. . . . Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly." Fero, 39 F.3d at 1474 (quotations omitted). We address each of Duckett's claims of prosecutorial misconduct in turn.

During voir dire, defense counsel asked a prospective juror, "Do you think that it's possible that there are other reasons [besides trying to hide something] the Defendant might not want to take the stand?" (1 Tr. at 173.) District Attorney Macy then said aloud, "like two prior convictions." (1 id.) Although he admitted making the remark, Macy claimed he said it in a low voice and that the

jury could not have heard him. The trial court refused defense counsel's request to have the jury dismissed as tainted. Also during voir dire, defense counsel asked another potential juror, "And, you think [an] insanity defense is a copout?" (2 id. at 387.) Macy then allegedly said, "you bet." (2 id.) Macy denied making this statement, and because the court did not hear the comment it again overruled a defense request to have the jury dismissed as tainted. The OCCA determined that Duckett had not shown any prejudice in connection with these statements. Duckett presents us with no evidence that the remarks were heard by the jury, and offers us no legal argument as to why the OCCA's ruling was unreasonable.

Duckett contends that ADA Miller made a series of inappropriate remarks during closing arguments at the guilt phase of the trial. He notes that Miller characterized a defense expert who testified that Duckett suffered from Post Traumatic Stress Disorder ("PTSD") as a "clinician, essentially a counselor. He is not trained as a scholar or a statistician, apparently he's not a very good test interpreter." (5 id. 1052.) The trial court overruled defense counsel's objection that Miller was impugning the witness based on his own opinion rather than anything in the record. Proceeding with his critique of the witness and the witness's psychological evaluation of Duckett, Miller then asked the jury, "Is that a thorough evaluation? Is that an impartial evaluation? Is that an evaluation by someone for someone because they're getting paid?" (5 id. at 1056.) On appeal,

the OCCA held that these statements did not constitute error because prosecutors "may comment on the veracity of [defense expert] witnesses and their testimony." Duckett, 919 P.2d at 19. We conclude that the OCCA's ruling was not unreasonable, particularly given the disputed nature of the expert's testimony at trial. Cf. McGregor v. Gibson, 219 F.3d 1245, 1256–57 (10th Cir. 2000) (denying habeas relief on a claim that challenged the prosecutor's remarks attacking defense experts and petitioner's insanity defense), overruled on other grounds by 248 F.3d 946 (10th Cir. 2001) (en banc).

Later, District Attorney Macy stated that "robberies are committed every day for a lot less than a car, robberies in which killings are involved." (5 Tr. at 1080.) Having earlier acknowledged defense counsel's continuing objection to such statements from the prosecution, the trial court never directly addressed the propriety of this comment. On appeal, however, the OCCA determined that the statement was proper because it was an appropriate comment on the evidence made in response to Duckett's argument that he would not have committed murder just to steal a car. (See 5 id. at 1070 ("You don't kill somebody like that for a car [and] two hundred bucks.").) Duckett argues that he was prejudiced by Macy's statement because it stressed to the jury its role as a protector of the community. He does not explain, however, why the OCCA's ruling was an unreasonable application of federal law, and we conclude that it was not.

Later during closing argument Macy stated, "The evidence says he's guilty. Don't you be a party to turning a cold-blooded murderer loose." (5 id. at 1095.) Defense counsel objected, but the objection was overruled by the trial court because "it's already done." (5 id. 1052.) The OCCA found this remark to be improper argument and refused to condone it, but stated that "in light of the overwhelming evidence against [Duckett] and the fact that this was an isolated comment, we do not find it to be prejudicial." Duckett, 919 P.2d at 19. Before this court, Duckett contends that "this statement stressed to the jury its role as protector of the community, and created a sense of societal alarm, implying that the jurors would violate their oaths if they did not convict the Petitioner." (Appellant's Br. at 15.) We have stated, however, that even "[a]n improper appeal to societal alarm typically does not amount to a denial of due process," Jones v. Gibson, 206 F.3d 946, 959 (10th Cir.), cert. denied, 531 U.S. 998 (2000), and we conclude that Duckett has not demonstrated that he was denied due process under the present circumstances.

During his closing argument Macy also stated, "Anytime I say or Mr. Miller says 'I think,' it's unintentional. We do not view our—we do not express our opinions. Anything that I state, anything Mr. Miller states is the position of the State of Oklahoma based on the evidence in this case." (5 Tr. at 1079.) Duckett, citing Viereck v. United States, 318 U.S. 236, 247–48 (1943), contends that by his

-10-

comments Macy improperly aligned himself with the state to bolster his argument. The OCCA found the comments to be harmless error. Although generally "prosecutors should not . . . place their own integrity and credibility in issue," Moore v. Gibson, 195 F.3d 1152, 1173 (10th Cir. 1999), we conclude that the OCCA's ruling on this issue was not unreasonable.

Duckett complains that ADA Miller improperly attacked his insanity defense by referring to it as "this Johnny-come-lately insanity defense" (5 Tr. at 1068) and by suggesting that Duckett was lying: "Now insanity. That's his only way out of here," (id.). Miller also stated that "at the time they gave [Duckett] enough evidence, enough hard evidence, to show that he didn't have any choice but to come up with something else, some other excuse. . . . He had only one choice. He had to come up with an excuse, excuse was insanity." (5 id. at 1049.) Although Duckett raised this claim in his brief before the OCCA on direct appeal, that court obviously overlooked this particular claim in its denial of relief. We therefore can accord no deference to the state court's disposition of the matter.[1]

---

[1] Although "we owe deference to a state court's result, even if its reasoning is not expressly stated," Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999), with respect to this particular claim there is no "result" to which we can defer. Unlike in Aycox, where there was "no evidence . . . that the state court did not consider and reach the merits of [petitioner's] claim," id., in the present case there is ample evidence that the OCCA, for whatever reason, failed to consider this individual claim altogether. Duckett raised over thirty propositions of error before the OCCA, and the court meticulously addressed each proposition

(continued...)

-11-

Even assuming, however, that these remarks were improper under Oklahoma law, see, e.g., Hoover v. State, 738 P.2d 943, 946 (Okla. Crim. App. 1987) (noting that a reference to defendant's theory as a "smoke screen" was improper, and listing cases reaching a similar result), overruled on other grounds by Williams v. State, 794 P.2d 759 (Okla. Crim. App. 1990), and Lenion v. State, 763 P.2d 381 (Okla. Crim. App. 1988), we conclude that they did not render Duckett's trial fundamentally unfair. Cf. McGregor, 219 F.3d at 1256–57 (denying habeas relief on a claim challenging the prosecutor's insinuations that petitioner's insanity defense was a fraud).

The jury was instructed by the trial court to consider the lesser included offenses of murder in the second degree and manslaughter in the first degree. Duckett contends, however, that Miller attempted to nullify the court's instructions by making the following comments to the jury: "Now, the Judge has given you lesser-included instructions on homicide offenses. The law requires this." (5 Tr. at 1042); "[Y]ou'll see that just one reading will allow their summary dismissal from this case." (5 id. at 1043); "Again, ladies and

---

[1](...continued)
individually except for this particular claim, which it did not resolve either individually or generically. Under these circumstances, we can only conclude that the OCCA did not render a decision on this claim. Unless we were prepared to state that deference is owed to a state court's failure to decide an issue, there is no result to which we can defer.

gentlemen, as I said, one reading of those Instructions, I submit to you, will allow you to summarily dismiss these [lesser included] crimes." (5 id. at 1044); and "You have a lot [of] extra law, like I just said, that you have to look through [w]hat the law requires." (5 id. at 1046–47). The OCCA held that the prosecution was "properly exercising its right to comment on the evidence and to draw inferences from it, by pointing out how the evidence did not support the lesser-included instructions, but did support first-degree murder." Duckett, 919 P.2d at 20. Duckett contends that Miller's remarks left the jury with "**no option** to convict on a non-capital offense." (Appellant's Br. at 20.) We disagree with Duckett's characterization of the effect of the prosecution's remarks and further note that we ordinarily assume that jurors have followed a judge's instructions. See Walker v. Gibson, 228 F.3d 1217, 1243 (10th Cir. 2000), abrogated on other grounds by Neill v. Gibson, 278 F.3d 1044 (10th Cir. 2001) (en banc), and cert. denied, 533 U.S. 933 (2001). We conclude that Duckett has failed to show that the OCCA's decision was unreasonable.

Duckett's final allegation of prosecutorial misconduct occurring at the guilt phase concerns District Attorney Macy's statement to the jury that Duckett was "getting a fair shake. He is getting a fair trial. He's getting every right granted him due to the Constitution [of] the state of Oklahoma, Constitution [of] the United States. You know who didn't get his rights? John Howard. Somebody

forgot about his rights. He had a right to live." (5 Tr. at 1077.) Duckett, citing Payne v. Tennessee, 501 U.S. 808 (1991), contends that Macy's statements were, in essence, victim-impact argument that is inappropriate at the guilt phase and that they infringed his right to a fair trial. On appeal, the OCCA stated that such comments "have been expressly condemned by this Court as being overly prejudicial to a defendant." Duckett, 919 P.2d at 19. Nonetheless, the OCCA concluded that "in light of the overwhelming evidence against [Duckett] and the fact that it was an isolated comment, we do not find it to be prejudicial." Id. We conclude that this determination was not unreasonable.

Duckett also alleges that the prosecution made improper comments during the sentencing phase of the trial. The Eighth Amendment requires that sentencing procedures in a capital case be evaluated under a heightened standard of reliability. Woodson v. North Carolina, 428 U.S. 280, 305 (1976). We have therefore held that "[t]he standard governing appellate review of closing arguments during the sentencing stage of capital cases is whether the comments might have affected the sentencing decision." Coleman v. Brown, 802 F.2d 1227, 1238 (10th Cir. 1986).

During closing arguments at the sentencing phase Macy asked the jury, "Ladies and gentlemen, is [Duckett] a threat to society? Don't you bet your lives on it." (6 Tr. at 1279.) Macy also asked whether it would be

-14-

> justice [to] send this man down to prison, let him have clean sheets to sleep on every night, three good meals a day, visits by his friends and family, while John Howard lies cold in his grave? Is that justice? Is that your concept of justice? How do Jayme and Tom and John's son go visit him?

(6 id. at 1285.) The OCCA held that "[t]hese kinds of comments cannot be condoned. There is no reason for them and counsel knows better and does not need to go so far in the future. However, we cannot find that the comments affected the verdict." Duckett, 919 P.2d at 19. Once again, Duckett offers us no reason to conclude that the OCCA was unreasonable in holding that these statements alone did not deprive him of a fair trial or affect his sentencing proceeding.

Having reviewed the entirety of the proceedings, we conclude that Duckett has failed to demonstrate that any of the OCCA's above determinations concerning trial error were unreasonable. He has likewise failed to show any error in the OCCA's determination that not one of Macy's improper statements was prejudicial in and of itself. Finally, he has failed to convince us that any of Macy's misconduct deprived him of a specific constitutional right that might merit habeas relief pursuant to Mahorney, 917 F.2d at 472.

We next address whether the cumulative effect of the prosecutorial misconduct identified by the OCCA deprived Duckett of a fair trial. Although each of the trial errors found by the OCCA was determined to be individually

-15-

harmless, the "cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir. 1990); see also Brecheen v. Reynolds, 41 F.3d 1343, 1355–56 (10th Cir. 1994). "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Rivera, 900 F.2d at 1470. The OCCA determined that the cumulative effect of the prosecutorial misconduct did not deprive Duckett of a fair trial. Duckett, 919 P.2d at 19. Having reviewed the transcripts from the voir dire, trial, and sentencing proceedings, we conclude that the improper prosecutorial statements identified by the OCCA did not, even when accumulated, have a sufficient prejudicial effect to deny Duckett a fair trial or to have affected his sentencing proceeding. Evidence supporting his guilt was strong, as was evidence supporting the jury's finding of those aggravating circumstances that were properly before it for consideration.[2]

2. Integrity of the Proceedings

In order to be entitled to habeas relief, a petitioner must ordinarily

---

[2] Our conclusion is not affected by the fact that the "avoid arrest" aggravating circumstance was found by the district court to have been erroneously submitted to the jury for lack of sufficient evidence.

demonstrate that any constitutional error "had substantial and injurious effect or influence in determining the jury's verdict," and that the error resulted in "actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quotations omitted). Nonetheless, the Court in Brecht noted that its holding

> does not foreclose the possibility that in an unusual case, a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict.

Id. at 638 n.9. Duckett contends that the prosecutorial misconduct engaged in by the prosecution was deliberate and egregious, making this the "unusual case" entitled to Brecht's "footnote-nine exception."[3]

As evidence that the prosecutorial misconduct in the present case was deliberate, Duckett notes that District Attorney Macy has been chastised for participating in the same type of improper argumentation in other cases. For instance, just one year before trial in the instant case, the OCCA reversed a

_____

[3] Because we conclude below that Macy's conduct does not make this the type of unusual case described in footnote nine and because the parties do not raise the issue, we do not address whether the "footnote-nine exception" to the harmless error standard of Brecht would ease a petitioner's burden under the AEDPA standard of review when the conditions of footnote nine have been met. See Hale v. Gibson, 227 F.3d 1298, 1324 (10th Cir. 2000) (holding that this court will apply the AEDPA standard of review where the state appellate court applied the correct constitutional standard, but that we will apply the Brecht harmless-error standard when the state appellate court applied an incorrect standard), cert. denied, 533 U.S. 957 (2001).

murder conviction prosecuted by Macy, soundly condemning his often underhanded trial tactics in the process. See McCarty v. State, 765 P.2d 1215, 1220–21 (Okla. Crim. App. 1988) (noting, inter alia, that Macy improperly expressed his personal opinion of the guilt of the accused; informed the jury it had a responsibility to convict on the basis of his own sense of justice; requested sympathy for the defendant's victims; and expressed his personal opinion as to the appropriateness of the death penalty). The OCCA concluded that the cumulative effect of this misconduct warranted vacation of defendant's death sentence, stating that it would "not stand idly by wringing its hands, expressing nothing more than a ritualistic verbal spanking and an attitude of helpless piety in denouncing the deplorable conduct of prosecutors such as we have found in this case." 765 P.2d at 1221 (quotations omitted).[4]

---

[4] It is clear that Macy's conduct did not improve over time. As Judge Chapel noted lasted year in Hooks v. State, the OCCA has

> repeatedly condemned the Oklahoma County District Attorney's reliance on improper argument. In addition to our warnings, federal reviewing courts have also repeatedly condemned Mr. Macy and prosecutors from his office for their habitual misconduct in argument. This court has let this flagrant disregard of our rulings pass too long. The second stage argument here contained several comments the prosecutors knew to be error, included for the purpose of inflaming the jury's passions and encouraging a sentencing verdict based on passion or prejudice rather than the evidence.

19 P.3d 294, 314 n.51 (Okla. Crim. App.) (citations omitted), cert. denied, 122 S.

(continued...)

In the present case, District Attorney Macy's behavior, which the district court found to be "inappropriate and juvenile" (1 R. Doc. 62 at 22), is emphatically not condoned by this court. To the contrary, our past experiences with this prosecutor leave us convinced that his "inappropriate" commentary at trial was intentional and calculated. See, e.g., Paxton v. Ward, 199 F.3d 1197, 1216–18 (10th Cir. 1999) (reversing conviction after noting that Macy acted "deceitfully" and "crossed the [constitutional] line between a hard blow and a foul one" when he invited the jury to draw an adverse inference from defendant's failure to counter the state's case); Trice v. Ward, 196 F.3d 1151, 1167 (10th Cir. 1999) (concluding that similar misconduct by Macy did not require reversal, but noting that "[o]ur conclusion that the comments at issue did not render the trial fundamentally unfair does not, however, amount to an endorsement of the comments, nor to a holding that they could never rise to the level of a due process violation absent the overwhelming evidence of guilt and aggravating circumstances present in this case").

Our nation's confidence in the fair and just administration of the death penalty is disserved by prosecutors who cynically test the bounds of the harmless-error doctrine. During his career, Macy would have done well to heed the

---

[4](...continued)
Ct. 371 (2001).

hortatory words of Justice Sutherland, who explained in <u>Berger v. United States</u> that a government prosecutor

> is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

295 U.S. 78, 88 (1935), <u>overruled on other grounds by</u> <u>Stirone v. United States</u>, 361 U.S. 212 (1960). As amply—but not exhaustively—demonstrated above, in his career Macy has struck hard blows and he has struck foul ones. Under the harmless-error doctrine we cannot afford relief to all defendants who have been subjected to his foul blows. This fact speaks only to our limited role in the federal system of justice and affords no ethical absolution for the prosecutor who repeatedly engages in such misconduct. Nor can the harmless-error doctrine check the erosion, engendered by such misbehavior, in the public's perception of the fairness of our nation's death-penalty proceedings. Macy's persistent misconduct, though it has not <u>legally</u> harmed the defendant in the present case, has without doubt harmed the reputation of Oklahoma's criminal justice system and left the unenviable legacy of an indelibly tarnished legal career.

In this case, for lack of a showing of prejudice, we deny habeas relief. The due process concerns flagged by footnote nine of <u>Brecht</u> will manifest themselves only in very limited circumstances. We agree with the Ninth Circuit that "the key consideration" to whether the footnote's exemption will be applicable "is whether the integrity of the proceeding was so infected that the entire trial was unfair." <u>Hardnett v. Marshall</u>, 25 F.3d 875, 879 (9th Cir. 1994). <u>Brecht</u> itself involved a prosecutor's repeated improper and egregious remarks to the jury, in violation of <u>Doyle v. Ohio</u>, 426 U.S. 610 (1976), concerning the defendant's pretrial silence. <u>See</u> <u>Brecht</u>, 507 U.S. at 625–26. Nevertheless, the Supreme Court analyzed the prosecutorial misconduct under a harmless-error standard, finding that the facts in the case did not involve a "deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct." <u>Id.</u> at 637 n.9. We conclude that Duckett has likewise failed to show that the prosecutorial misconduct in the present case so infected the trial as to make the proceeding fundamentally unfair and thus immune from harmless-error review.

**B**

Duckett argues that his trial counsel was ineffective for failing to investigate mitigation evidence for the sentencing phase. An ineffective-assistance-of-counsel claim is a mixed question of fact and law that, having been presented to the state court, is subject to the standards of review set forth in 28

U.S.C. § 2254.  Gonzales v. McKune, 247 F.3d 1066, 1072 (10th Cir. 2001).

Duckett specifically contends that trial counsel was ineffective because he unreasonably failed to uncover facts indicating that Duckett had been sexually abused by a family member[5] and that Duckett was substantially impaired at the time of the murder due to his addiction to marijuana, methamphetamine, and cocaine.[6]  Because Duckett did not assert this claim on direct appeal, under Oklahoma's Post-Conviction Procedure Act, Okla. Stat. tit. 22, § 1089(C),  he was procedurally barred from raising the claim before the OCCA on post-conviction review.  In an attempt to clear the procedural-bar hurdle, Duckett argued before the OCCA that his appellate counsel was ineffective for failing to raise the claim on direct review.  The OCCA considered Duckett's argument and rejected it.  In doing so, it explained that Rust Eddy, an investigator hired by Duckett's trial counsel, had stated in an affidavit submitted to that court that

> while it would have been typical for [Eddy] to ask the defendant and those who knew him about the use of illegal drugs, he **has no recollection** of information concerning Petitioner's history of drug use or the specific facts concerning Petitioner's drug abuse in the weeks and days before the offense.  Mr. Eddy next states:

---

[5]  After the conclusion of the trial, Duckett's appellate counsel learned of evidence indicating that as a child Duckett may have suffered an incident of sexual abuse by a cousin.  As evidence of this abuse, counsel submitted a series of affidavits to the OCCA as part of Duckett's application for post-conviction relief.

[6]  According to affidavits in the record, Duckett apparently smoked three to five marijuana cigarettes a day since age eleven, injected methamphetamine daily since his escape from prison, and abused cocaine and alcohol.

> During the course of preparation for trial, Mr. Duckett's defense team discovered that Mr. Duckett may have been suffering from Post Traumatic Stress Disorder stemming from a prison rape during his incarceration [at] the Joseph Harp Correctional Center. After we discovered this fact, the defense team abandoned the development of any other defense theories and focused on the Post Traumatic Stress Disorder. As a result, I do not recall whether we continued an investigation into Mr. Duckett's drug use.

> It is clear that defense counsel's decision not to pursue other possible defenses was a tactical one. We must apply a "heavy measure of deference" to trial counsel's strategic decision to raise the defense of temporary insanity associated with Post Traumatic Stress Disorder rather than a defense or mitigation based upon diminished capacity or drug intoxication at the time [of] the offense as propounded by Petitioner. See Strickland v. Washington, 466 U.S. 648, 691 (1984). To conclude that trial counsel's defense strategy and resulting decisions concerning further exploration of other defenses were unreasonable would be to second guess trial counsel's performance by hindsight. Strickland does not require this degree of judicial scrutiny. Id. at 689. We find that trial counsel's strategic defense decisions were neither deficient nor prejudicial and that [he] provided Petitioner reasonably effective assistance. Accordingly, appellate counsel was not ineffective in failing to attack trial counsel's performance. An attack after the fact is so easy. Trial counsel here acted properly. This proposition is denied.

(3 R. Doc. 26 App. 10 at 5–6 (emphasis in original, parallel citations omitted).)

Because the OCCA determined that Duckett had waived his claim of ineffective assistance of trial counsel, habeas review is precluded in this court unless Duckett can either establish that cause and prejudice excused his default, or show that our refusal to consider his claims will result in a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991).

-23-

Duckett does not assert a fundamental miscarriage of justice, instead reurging before this court that we should find cause for the default in the ineffectiveness of his appellate counsel. See id. at 752–54 (holding that constitutionally ineffective assistance can establish cause to excuse a procedural default). Because, as noted above, the OCCA considered Duckett's claim of ineffective assistance of appellate counsel, we review its determination pursuant to the standards set forth in AEDPA.

In order to succeed on his claim that appellate counsel was ineffective, Duckett must first demonstrate that he would have been entitled under Strickland v. Washington, 466 U.S. 668 (1984), to relief for the ineffectiveness of trial counsel. See Hooks v. Ward, 184 F.3d 1206, 1221 (10th Cir. 1999) ("When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, we look to the merits of the omitted issue."). Strickland, of course, requires a showing that counsel's performance was both deficient and prejudicial to the defense. 466 U.S. at 692, 694. The relevant question is "whether appellate counsel was 'objectively unreasonable' in failing to raise [this claim] on direct appeal and, if so, whether there is a 'reasonable probability that, but for his counsel's unreasonable failure' to raise these claims, [petitioner] 'would have prevailed on his appeal.'" Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001) (quoting Smith v. Robbins, 528 U.S. 259, 285–86 (2000)), petition for cert. filed,

-24-

__ U.S.L.W. __ (U.S. May 6, 2002) (No. 01-10121).

We have noted that counsel "has a <u>duty</u> to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence." <u>Brecheen</u>, 41 F.3d at 1366 (quotation omitted). This duty to conduct a reasonable investigation is particularly important with respect to the sentencing phase of a capital trial, and we have thus "recognized a need to apply even closer scrutiny when reviewing attorney performance during the sentencing phase of a capital case." <u>Battenfield v. Gibson</u>, 236 F.3d 1215, 1226 (10th Cir. 2001) (quotation omitted). As we explained in <u>Romano v. Gibson</u>,

> The sentencing stage is the most critical phase of a death penalty case. Any competent counsel knows the importance of thoroughly investigating and presenting mitigating evidence. As a practical matter, the defendant probably has little or no chance of avoiding the death sentence unless the defense counsel gives the jury something to counter both the horror of the crime and the limited information the prosecution has introduced about the defendant. Mitigating evidence plays an overwhelmingly important role in the just imposition of the death penalty. It affords an opportunity to humanize and explain—to individualize a defendant outside the constraints of the normal rules of evidence.

239 F.3d 1156, 1180 (10th Cir.) (quotations omitted), <u>cert. denied</u>, <u>Woodruff v. Gibson</u>, 122 S. Ct. 624 (2001). We are, moreover, "mindful of the Supreme Court's observation that our duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case," in which

-25-

"counsel's duty to investigate all reasonable lines of defense is strictly observed." Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir. 1997).

Nonetheless, "[t]he failure to present available mitigating evidence is not per se ineffective assistance of counsel," Hale v. Gibson, 227 F.3d 1298, 1315 (10th Cir. 2000), cert. denied, 533 U.S. 957 (2001), and "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments," Strickland, 466 U.S. at 691. In this regard, we have noted that "counsel frequently will 'winnow out' weaker claims in order to focus effectively on those more likely to prevail." Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995) (quoting Smith v. Murray, 477 U.S. 527, 536 (1986)). Not all decisions to abandon potential lines of defense are, of course, reasonable. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 690.

We easily conclude that the decision of Duckett's trial counsel to focus its efforts on Duckett's PTSD defense was, under the circumstances, a reasonable tactical decision and that Duckett's trial counsel was not ineffective in this

regard. According to Eddy's affidavit, the defense team did, in fact, attempt to investigate Duckett's sexual abuse, and presumably investigated Duckett's history of drug abuse as well. Although Eddy stated in his affidavit that "I currently have no recollection of information concerning Mr. Duckett's history of drug use or the specific facts concerning Mr. Duckett's drug abuse in the weeks and days before the offense" (3 R. Doc. 26 App. 6 at 2), he also noted that "it would have been typical for me to ask the defendant and those who knew the defendant about the defendant's use of illegal drugs and abuse of legal drugs. I have no reason to believe I would have done things any differently in Mr. Duckett's case," (3 id. at 1–2). With respect to the incident of childhood sexual abuse that Duckett may have suffered at the hands of a cousin, Eddy acknowledged that he interviewed Duckett's parents and specifically asked whether either of them had any information that Duckett had been physically or sexually abused as a child; he was answered in the negative.

It would be unreasonable to deem trial counsel ineffective for failing to discover potential mitigating evidence when counsel conducted a reasonable investigation but was stymied by potential witnesses who were not forthcoming. We have in similar circumstances noted that "counsel cannot be faulted for failing to raise claims as to which the client has neglected to supply the essential underlying facts . . . [because] clairvoyance is not required of effective trial

counsel." United States v. Miller, 907 F.2d 994, 999 (10th Cir. 1990) (quotations omitted).  Given trial counsel's good-faith investigation, it was a reasonable tactical decision to abandon further inquiry into the drug-and-sexual-abuse line of potential mitigating evidence and instead focus on developing a PTSD defense. We therefore conclude that trial counsel's performance did not fall "below an objective standard of reasonableness," measured "under prevailing professional norms." Strickland, 466 U.S. at 688.[7]  Having determined that Duckett's claim fails the first prong of the Strickland standard, we need not address whether he was prejudiced by counsel's performance.  See Romano, 239 F.3d at 1181 ("This court can affirm the denial of habeas relief on whichever Strickland prong is the easier to resolve.").  Because trial counsel was not ineffective, appellate counsel correlatively cannot be ineffective for failing to raise a dependent ineffectiveness claim.  The conclusion reached by the OCCA on this matter was not, perforce, contrary to clearly established Supreme Court precedent.  Because Duckett has failed to demonstrate either cause and prejudice for the procedural default of his claim of ineffective assistance of trial counsel, or that our refusal to consider his claim would result in a fundamental miscarriage of justice, we conclude that we

---

[7]  We thus also conclude that Duckett's trial counsel was not ineffective for failing to request funds, pursuant to Ake v. Oklahoma, 470 U.S. 68, 83 (1985), to hire a psychiatrist to evaluate Duckett's mental health and potentially testify at the sentencing phase of the trial.

are precluded from addressing the merits of the claim.

C

Duckett further contends that the federal district court erred by not granting his request for funds to employ an expert witness who would testify at the evidentiary hearing in which the district court considered the ineffective-assistance-of-counsel claim discussed above. Duckett argued before the district court that it was necessary to present expert testimony from a lawyer experienced in conducting capital cases to "opine[] that no legitimate reason existed why trial counsel would not have learned or presented [evidence of sexual molestation and chronic drug abuse] to the jury." (6 R. Doc. at 59.) The district court is, of course, authorized to appoint necessary investigative assistance to a defendant:

> In any post conviction proceeding under [28 U.S.C. § 2254] seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services . . . .

21 U.S.C. § 848(q)(4)(B). Moreover, contrary to the state's contention in its briefs, expert legal witnesses have not been barred from testifying in this circuit about claims of ineffective assistance of counsel. See, e.g., Smith v. Massey, 235 F.3d 1259, 1269 (10th Cir. 2000) (taking into consideration legal expert testimony with respect to an ineffectiveness claim), abrogated on other grounds by Neill, 278 F.3d at 1057 n.5 (en banc), and cert. denied, 122 S. Ct. 235 (2001); Demarest

v. Price, 130 F.3d 922, 936 (10th Cir. 1997) (same).

We review a district court's denial of a motion to appoint an expert for abuse of discretion. Matthews v. Price, 83 F.3d 328, 335 (10th Cir. 1996); United States v. Nichols, 21 F.3d 1016, 1017 (10th Cir. 1994). An indigent defendant requesting appointment of an investigator or expert bears the burden of demonstrating with particularity that "such services are necessary to an adequate defense." United States v. Grechner, 802 F.2d 373, 376 (10th Cir. 1986). The district court in the present case was eminently suited to determine the essentially legal question of whether defense counsel's adoption of its legal strategy was or was not deficient. Duckett has brought forward no compelling arguments that would lead us to conclude that the district court abused its discretion in deciding that the testimony of a legal expert was not "reasonably necessary."

**D**

Duckett contends that the admission into evidence, during the guilt phase of his trial, of a disturbing police-made videotape of the crime scene deprived him of a fundamentally fair trial. The OCCA addressed this evidentiary issue on direct review, concluding that the videotape—which pictured the bloody murder scene as well as the victim's body—was neither cumulative of other crime scene photographs nor more prejudicial than probative:

While the videotape is graphic, it is not so gruesome as to be considered prejudicial. The victim is in the background and his head is turned away so the major injuries inflicted upon the victim are not being constantly shown to the jury. The videotape does have probative value since no pictures were admitted that showed the deceased's head or shoulders, where the majority of the injuries were sustained. The videotape also corroborates the medical examiner's testimony and refutes [Duckett's] theory that the crime was committed without malice.

Duckett, 919 P.2d at 16. We may not provide habeas corpus relief on the basis of state court evidentiary rulings "unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." Mayes v. Gibson, 210 F.3d 1284, 1293 (10th Cir.), cert. denied, 531 U.S. 1020 (2000). "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," when engaged in such an endeavor a federal court must "tread gingerly" and exercise "considerable self-restraint." United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990). Acknowledging these standards, the district court determined that admission of the videotape "was not so unduly prejudicial as to render the proceedings against petitioner fundamentally unfair." (1 R. Doc. 62 at 62 (quotation omitted).)

Having ourselves reviewed the videotape and the record as a whole, we agree with the district court that Duckett's trial was not rendered fundamentally unfair by the videotape's introduction into evidence. We do not accept Duckett's argument that the only purpose the videotape could have served at trial was to

-31-

prove the applicability of the "heinous, atrocious, or cruel" aggravating circumstance and that, because the videotape failed to prove that the victim consciously suffered, its probative value was nil. (Appellant's Br. Expanded COA at 4–5, 8–9.) To the contrary, the videotape was admitted during the guilt phase of the trial, and the OCCA, as noted above, identified several ways in which the videotape was probative of guilt-stage issues. We agree with the district court and the OCCA that the videotape was not so gruesome as to have prejudiced the jury to such an extent that Duckett's trial was rendered fundamentally unfair, and we therefore decline to grant habeas corpus relief to Duckett on this ground.[8]

### E

After hearing evidence at the sentencing stage of Duckett's trial, the jury indicated on a special verdict form that it had unanimously found, beyond a reasonable doubt, the existence of five aggravating circumstances—that the

---

[8] Duckett makes a passing reference at the close of his brief to the hearsay nature of the audio portion of the videotape, which is narrated by both on- and off-screen police investigators discussing the evidence at the crime scene. The investigators comment on blood splatter and smears, discuss the position of the body, and on one occasion stage a re-enactment of a portion of the crime. Duckett does not contend, however, that any of the unsworn statements were not also presented to the jury as sworn testimony at trial. Even assuming that it was error for the trial court to have allowed into evidence the audio portion of the videotape, we conclude, upon a review of the entire record, that Duckett has not demonstrated that the trial court's allegedly improper evidentiary ruling rendered his trial fundamentally unfair.

murder was especially heinous, atrocious, or cruel; that Duckett was previously convicted of a felony involving the use or threatened use of force or violence against a person; that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; that the murder was committed while Duckett was serving a sentence of imprisonment; and that Duckett would probably commit acts of violence which would constitute a continuing threat to society. The jury also unanimously found that these aggravating circumstances outweighed the mitigation evidence that Duckett had presented at trial. In his petition for a writ of habeas corpus, Duckett alleged before the district court that the "avoid arrest" aggravating circumstance was unsupported by sufficient evidence and that it therefore should not have been presented to the jury. Although the court agreed, it concluded that Duckett was not entitled to habeas relief because the erroneous submission of this aggravating circumstance was harmless error that did not have a substantial and injurious effect or influence on the jury's verdict.

Duckett contends that the district court erroneously performed its harmless-error analysis with respect to the invalid aggravating circumstance, offering three rationales in support of his argument. He suggests first that the federal courts have no authority to perform a harmless-error analysis when the district court, rather than a state appellate court, has determined that an aggravating

circumstance is invalid.  Alternatively, he argues that a federal court must "reweigh" a defendant's mitigation evidence against the remaining valid aggravating circumstances when performing its harmless-error analysis. (Appellant's Br. at 39.)  Finally, he contends that even if it is proper for the federal court to perform a harmless-error analysis itself without actually reweighing the mitigation and aggravation evidence, the district court nonetheless erred by failing to take into consideration the mitigation evidence that Duckett presented at trial.  Because these three arguments are interrelated, we address them together.

The decision of a district court whether to apply a harmless-error analysis is a legal question which we review de novo.  Because the district court's harmless-error analysis itself is a mixed question of law and fact, Hunt v. Oklahoma, 683 F.2d 1305, 1309 (10th Cir. 1982), we review the court's conclusions of law de novo and its findings of fact, if any, for clear error, Walker, 228 F.3d at 1225.

In Clemons v. Mississippi, 494 U.S. 738 (1990), the Supreme Court sanctioned the practice of a state appellate court's reweighing of aggravation and mitigation evidence after the state court's determination that an aggravating circumstance was improperly submitted to the jury.  "Nothing in the Sixth Amendment," the Court explained, "indicates that a defendant's right to a jury trial would be infringed where [a state] appellate court invalidates one of two or

more aggravating circumstances found by the jury, but affirms the death sentence after itself finding that the one or more valid remaining aggravating factors outweigh the mitigating evidence." Id. at 745.[9] In addition, the Court approved the practice of a state appellate court reviewing for harmlessness the submission to the jury of an invalid aggravating circumstance, stating that "it [is] open to the [state appellate court] to find that the error which occurred during the sentencing proceeding was harmless."[10] Id. at 752. Clemons therefore stands for the proposition that state appellate courts, rather than having to remand the sentencing determination to the jury when errors have occurred in a capital sentencing proceeding, may first engage in either a harmless-error or a reweighing

---

[9] The Court's discussion in Clemons is premised on the assumption that the capital sentencing scheme is that of a "weighing state." In a weighing state, "after a jury has found a defendant guilty of capital murder and found the existence of at least one statutory aggravating factor, it must weigh the aggravating factor or factors against the mitigating evidence." Stringer v. Black, 503 U.S. 222, 229 (1992). Oklahoma, like Florida, is a "weighing state." Castro v. Ward, 138 F.3d 810, 816 (10th Cir. 1998).

[10] The Court identified two ways in which the state court could properly find such error to be harmless—either by balancing the remaining valid aggravating circumstances against the mitigating circumstances and determining whether beyond a reasonable doubt the jury would have reached the same result, or by asking whether it was beyond a reasonable doubt that the jury would have found the presence of the invalidated aggravating circumstance if the improperly defined aggravating circumstance had been properly presented to the jury. Clemons, 494 U.S. at 754–55.

-35-

analysis to determine whether such a remand is necessary.[11]  Contrary to

Duckett's suggestion, Clemons does not mandate that any court—state or

federal—engage in a reweighing process once it determines that an aggravating

circumstance has been improperly submitted to a jury.

The duty of a federal habeas court when it finds constitutional trial error

that was not addressed by the state court is clear.  Pursuant to Brecht, a federal

court may not afford a petitioner habeas relief before determining whether the

error had a "substantial and injurious effect or influence in determining the jury's

verdict."  507 U.S. at 623 (quotation omitted).  Although we have acknowledged a

circuit split on the issue, we have specifically held that harmless-error analysis "is

available to us on federal habeas review where the error involves the submission

to the jury of an unconstitutionally vague aggravating circumstance."  Davis v.

Exec. Dir. Dep't of Corr., 100 F.3d 750, 768 n.18 (10th Cir. 1996).

Providing some guidance to the federal courts faced with deciding whether

---

[11]  We offer no opinion whether the Court's holding in Clemons will survive in light of the recent decision in Ring v. Arizona, that "[c]apital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."  122 S. Ct. 2428, 2432 (2002).  After oral argument had taken place in the instant case, Duckett moved this court to abate the proceedings in order to allow him to exhaust a Ring claim in state court.  The substance of Duckett's claim was not raised before the district court.  Because we generally do not consider issues raised for the first time on appeal, Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 720 (10th Cir. 1993), we conclude that holding this matter in abeyance would be pointless.  We therefore deny Duckett's motion.

a trial error had substantial and injurious effect or influence in determining the jury's verdict, the Supreme Court has indicated that "where the record is so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of an error," the error is not harmless. O'Neal v. McAninch, 513 U.S. 432, 437 (1995). We have similarly stated that our task is to "determine, in light of the entire record, whether [the error] so influenced the jury that we cannot conclude that it did not substantially affect the verdict, or whether we have grave doubt as to the harmlessness of the errors alleged." Tuttle v. Utah, 57 F.3d 879, 884 (10th Cir. 1995).

Applying the Brecht standard, we conclude that the improper submission to the jury of the "avoid arrest" aggravating circumstance in the present case was harmless error. As the district court noted, four aggravating circumstances were properly submitted to the jury and found to exist beyond a reasonable doubt, the "avoid arrest" aggravating circumstance was not "emphasized disproportionately" during closing argument, Davis, 100 F.3d at 773, and the prosecution did not "allude to any evidence or facts not already properly before the jury," id. Although the district court did not explicitly state that it took into consideration the weight of the mitigation evidence presented by Duckett in reaching its determination that the improper submission of the aggravating circumstance was harmless, the court did note that "in light of the entire record" it found the error

-37-

to be harmless.  (1 R. Doc. 62 at 51.)  We, too, have reviewed this error in light of the entire record—including all of the mitigation evidence submitted by Duckett—and conclude, without doubt, that the jury would have reached the same sentencing decision.[12]

### III

The district court's dismissal of Duckett's petition for a writ of habeas corpus is **AFFIRMED**.

------

[12]  Because under our harmless-error analysis we do not reweigh mitigation and aggravation evidence, it is unnecessary for us to provide Duckett with "notice and an opportunity to be heard" concerning the enduring validity of the "continuing threat to society" aggravating circumstance found by the jury. (Appellant's Br. at 41.)  Contrary to Duckett's contention, by performing our harmless-error review we do not "sit as sentencer," and our determination that the constitutional trial error was harmless is not a "sentencing." (Id.)  Though in some circumstances harmless-error review may superficially resemble the reweighing of mitigation and aggravation evidence, our role on habeas review is not that of factfinder.  That Duckett was found by the jury to be a continuing threat to society is a factual determination that we as a habeas court will not reconsider.