ORDER AND JUDGMENT*
WADE BRORBY, Circuit Judge.
After examining the briefs and appellate record, this panel has determined unani *834 mously that oral argument would not materially assist in the determination of this appeal. See Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.
Defendant-Appellant Jason Claycomb appeals his convictions on grounds the district court abused its discretion and violated his due process rights in denying his motion for a continuance of his trial. He also claims the government violated his Fifth Amendment due process rights when it “vouched” for the truth and veracity of cooperating witness testimony by asking questions regarding its “golden rule.” We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.
I. Factual and Procedural Background
From approximately November 2006 to July 2007, Mr. Claycomb was incarcerated at the Larimer County Detention Center in Fort Collins, Colorado, on charges unrelated to the instant case. While housed at that facility, Mr. Claycomb used the detention center’s telephone on an average of at least two hours a day, spent over $14,094.77 on telephone calls, and made a total of 3,558 successful calls. Each time Mr. Claycomb made a telephone call from the detention center he received a recorded warning stating, “This call may be recorded and it may be subject to monitoring at any time.” All of Mr. Claycomb’s calls were tracked and recorded and later transferred to disks. The incriminating telephone recordings established Mr. Clay-comb arranged drug deals while incarcerated at the detention center by instructing individuals on the sale of methamphetamine and cocaine transported from Fort Collins to Gillette, Wyoming.
As a result of Mr. Claycomb’s telephone calls, in January 2007 the Wyoming Division of Criminal Investigation began an investigation into a drug conspiracy involving several individuals selling, buying, and transporting drugs from Fort Collins to Gillette under Mr. Claycomb’s direction. On September 20, 2007, a superceding indictment issued in which the government charged Mr. Claycomb and others with one count of conspiring to possess with intent to distribute and distribute methamphetamine between October 2005 and July 2007, in violation of 21 U.S.C. §§ 841(a)(1) and 846. On November 26, 2007, the district court entered a discovery order in conjunction with Federal Rule of Criminal Procedure 16, including a provision requiring the government to provide Mr. Clay-comb any item the government intended to use in its case-in-chief at trial. Fed. R.Crim.P. 16(e). Thereafter, on January 17, 2008, a second superceding indictment followed which retained the count against Mr. Claycomb and the others, but added additional defendants. After the other defendants pleaded guilty, a third superced-ing indictment issued on September 25, 2008, charging only Mr. Claycomb with conspiring to possess with intent to distribute and distributing methamphetamine and cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, as well as two firearm counts not previously included.
Sometime in December 2007, pursuant to the Rule 16 discovery order, the government provided to Mr. Claycomb’s counsel what it believed were all of his telephone recordings made at the detention center. Then, in April 2008, the government provided Mr. Claycomb and his counsel a spreadsheet listing every telephone call he made from the detention center as well as a disk containing only the telephone recordings the government intended to use at trial. Four months later, on August 15, 2008, Mr. Claycomb appeared before the *835 district court at a change of plea hearing, but after learning how the advisory United States Sentencing Guidelines may apply in his case, including an increase in his base offense level for his leadership or managerial role in the conspiracy, he requested additional time to consider his plea, which the district court granted.
On August 27, 2008, at his next scheduled plea hearing, Mr. Claycomb’s counsel requested a continuance, explaining Mr. Claycomb had not reviewed the telephone recordings provided but wanted to listen to all of the calls he made from the detention center. His counsel explained a continuance was needed because: (1) Mr. Clay-comb had previously attempted to listen, at least one time, to the disks provided, but because one of the conversations with a friend, since deceased, upset him, he asked counsel to stop the recordings; (2) the initial plea hearing regarding his leadership role “concerned” Mr. Claycomb because he had not listened to the disks; (3) while counsel tried to impress on Mr. Claycomb three months earlier the seriousness of his situation, Mr. Claycomb only now understood the ramifications; (4) Mr. Claycomb insisted on listening to all of his telephone recordings rather than a condensed version of them; (5) it was important for Mr. Claycomb to listen to all of the telephone recordings as they could contain evidence to help prepare a sound defense; and (6) counsel arranged with jail staff for Mr. Claycomb to listen to the recordings on an MP3 player provided by counsel, but because of restrictions on use of a private room Mr. Claycomb could only listen to them a few hours at a time.
In turn, the government objected to a continuance, explaining Mr. Claycomb had several months to listen to the recordings of his telephone calls and that the summary disk of those telephone calls it intended to use at trial would only take an hour and a half of listening time. The district court found Mr. Claycomb was not prepared to enter a guilty plea, concluded the hearing, and set a trial date.
Two months later, on October 16, 2008, the parties gathered for another hearing to discuss several pending motions, including a bond hearing related to Mr. Claycomb’s requested release from the detention facility for the purpose of listening to the recordings. Mr. Claycomb’s counsel advised the district court that counsel had reviewed many of the calls he thought were important and those the government identified as important, and an iPod was provided to Mr. Claycomb to listen to the disks, but too many telephone calls existed for Mr. Claycomb to listen to while incarcerated. Counsel then requested Mr. Claycomb be released on bond to a transitional facility so he could listen to all his recorded telephone calls at his defense counsel’s office.
In making his request, Mr. Claycomb’s counsel provided a letter from a staffer at the detention center which actually disclosed that while Mr. Claycomb asked to listen to the telephone recordings on a daily basis, the staffer had seen Mr. Clay-comb only leave his cell twice in one month to listen to the recordings. In addition, unrebutted evidence presented by a United States Marshal established Mr. Clay-comb had not listened to his iPod since September 6, 2008, and that while staff had attempted to wake him several mornings for the purpose of listening to his iPod, he had refused to get up. As a result, over the prior two weeks staff had quit attempting to wake him. The district court denied Mr. Claycomb’s bond request but issued an order instructing detention center staff to: (1) give him the opportunity to listen to the telephone recordings through a playing device furnished by counsel; (2) make the playing device available to him every day in his jail cell or a *836 private setting at the detention center; and (3) wake him every morning at 8:00 to listen to the telephone recordings for an eight-hour period each day.
Two months later, on December 2, 2008, and just prior to the commencement of the trial set for that day, Mr. Claycomb’s counsel again requested additional time to listen to the telephone recordings. According to counsel, while he received disks of the recordings, he and Mr. Claycomb did not discover until the evening before trial that the disk which supposedly contained all of the calls from November 2006 through February 1, 2007, only contained three days of recordings, from January 25 to 28, 2007. In turn, the government admitted the disk it provided to defense counsel in December 2007, which it believed contained those telephone calls, did not contain all of them. However, it also explained that in April 2008 — at least seven months prior to trial, it provided defense counsel a spreadsheet of every telephone call recorded, as well as the disk containing only those telephone calls it considered part of its case-in-chief and intended to use at trial. It also noted that it allowed defense counsel access to every item of evidence in the case, and defense counsel spent a week reviewing the government’s evidence.
Mr. Claycomb’s counsel admitted he received the disk with the telephone calls the government intended to use at trial and did not object to the government’s use of those recordings. However, counsel again requested more time to review the other inadvertently omitted telephone recordings which he and Mr. Claycomb did not realize were missing until the night before trial, explaining, “[tjhere might be something in there that I can use,” and “[m]y client would like to hear them to see if there’s anything in there I can use in his defense.” In addition, while Mr. Claycomb’s counsel admitted he possessed the spreadsheet identifying every call from November through January, he stated he did not realize “until last night” that it corresponded to every recorded call. The district court disagreed, stating:
Well, I am not going to give you an objection. I think it is your own fault. I think that you should have compared the logs to the phone transcripts and also to the audio of it. I would think that would be the first thing you would do, not the last.
If you or Mr. Claycomb haven’t gotten around to hearing them, that’s nothing I can help.
As to Mr. Claycomb’s counsel’s argument something might exist in the telephone recordings to use in Mr. Claycomb’s defense, the district court stated, “I’m sorry .... but you’ve had plenty of time.” Accordingly, it denied Mr. Claycomb’s request for a continuance and the parties proceeded to trial.
During the trial, the government called as witnesses five law enforcement or detention facility personnel and seven individuals involved in the conspiracy who pleaded guilty. It also introduced only the telephone recordings designated for its case-in-chief which were provided to Mr. Claycomb’s counsel on a disk in April 2008. Those recordings were used in conjunction with the testimony of at least three cooperating witnesses for the purpose of proving Mr. Claycomb’s guilt. Specifically, Mr. Claycomb’s girlfriend, Mia Brown, identified her plea agreement and the provision stating her understanding a reduction of her sentence could occur based on the district court’s determination of her assistance to the government, including the government’s evaluation of her truthfulness. She also testified she spoke with Mr. Claycomb every day while in jail and he instructed her on the purchase and sale *837 of the drugs as well as directed her to obtain his 9mm machine gun from the location where he stored it before police found it. At the end of her testimony, she listened to and identified calls involving herself and others with Mr. Claycomb while he was at the detention center — all of which corroborated her earlier testimony that he instructed her and others with respect to multiple drug transactions. She admitted she lied in her initial statements to law enforcement officers, but when questioned on redirect examination about what the United States Attorney’s Office termed the “golden rule,” she stated she understood it was “[t]o always tell the truth.”
Similarly, other cooperating witnesses involved in the same drug conspiracy corroborated Ms. Brown’s or other witnesses’ testimony, testifying as to: (1) Mr. Clay-comb’s role in selling drugs transported from Fort Collins to Gillette; (2) the fact he continued to direct those drug sales from jail through his girlfriend and others; and/or (3) the quantity of cocaine and methamphetamine Mr. Claycomb was responsible for selling. Like Ms. Brown, two other witnesses identified incriminating telephone recordings made between Mr. Claycomb, themselves, and others while he was incarcerated. In addition to Ms. Brown, the government also asked three of the six other cooperating witnesses to explain their understanding of the “golden rule,” which they said was to tell the truth, and all of the cooperating witnesses were asked to identify their plea agreements and the assistance to government provision for a reduction in sentence and all indicated it required them to tell the truth. One witness also testified he traded a machine gun to Mr. Claycomb in exchange for methamphetamine.
Following the evidence presented at trial, a jury found Mr. Claycomb guilty of all three counts, including conspiring to possess with intent to distribute and distributing methamphetamine and cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; possessing a machine gun in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(l)(B)(ii); and possessing a firearm not registered in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5841, 5845(a), and 5861(d). The district court then sentenced Mr. Claycomb to 360 months imprisonment on the conspiracy count; 360 months imprisonment on the machine gun count, to run consecutively to the sentences for the other counts; and 120 months imprisonment on the gun registration count, to run concurrently with the other sentences.
II. Discussion
A. Denial of Motion for Continuance of Trial
Mr. Claycomb now appeals his convictions on grounds the district court abused its discretion and violated his due process rights by denying his motion for a continuance of the trial. In support of his claim, Mr. Claycomb contends the excluded telephone recordings may contain exculpatory evidence, including possible instances where he “opposed numerous of the drug deals proposed by the other participants .... ” By not listening to those tape recordings, Mr. Claycomb claims he was prejudiced because he had insufficient time to prepare a defense, prepare for his own potential testimony, or investigate and prepare a challenge to those telephone recordings the government used at trial. While he admits he was a party to the recordings in question, Mr. Claycomb suggests the tape recordings of his telephone calls were made too far in the past for him to recall their contents. Additionally, he claims the district court acted unreasonably and arbitrarily in denying a continuance because *838 neither he nor his counsel could have “gotten around to hearing” all the telephone calls because the government never provided them.
In response, the government argues: (1) neither Mr. Claycomb nor his counsel were diligent in reviewing the telephone recordings, and, had they been diligent, it would have hastened their eve-of-trial discovery that some of the recorded telephone calls were missing; (2) it is unlikely Mr. Clay-comb would have listened to the recordings in the event of yet another continuance, given his history of not listening to them; (3) Mr. Claycomb’s request for a continuance of unspecified time on the day of the trial would have caused the government, its witnesses who traveled from Colorado, the jurors, and the court great inconvenience; and (4) Mr. Claycomb failed to demonstrate a need for a continuance or that he suffered any harm by denial of his request because he insufficiently asserted what he expects to discover in those recordings.
In addressing the issues presented on appeal, we first turn to our standard of review and the principles underlying motions for continuance. We review a district court’s denial of a motion for continuance for abuse of discretion, “assigning error only if the district court’s decision was arbitrary or unreasonable and materially prejudiced the defendant.” United States v. Apperson, 441 F.3d 1162, 1204 (10th Cir.2006) (internal quotation marks, citation, and alteration omitted). We have said that whether a district court’s denial of a motion for continuance is arbitrary or unreasonable depends, in part, on:
[1] the diligence of the party requesting the continuance; [2] the likelihood that the continuance, if granted, would accomplish the purpose underlying the party’s expressed need for the continuance; [3] the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; [and] [4] the need asserted for the continuance and the harm that [the] appellant might suffer as a result of the district court’s denial of the continuance.
United States v. Rivera, 900 F.2d 1462, 1475 (10th Cir.1990) (internal quotation marks and citation omitted).
As the government contends, neither Mr. Claycomb nor his counsel acted diligently in reviewing the disk of telephone recordings in their possession since December 2007 — a whole year prior to commencement of the trial. During that time, the district court allowed at least two prior continuances for them to review the recordings provided, and the government furnished a spreadsheet showing all of Mr. Claycomb’s telephone calls. While Mr. Claycomb claims neither he nor his counsel could have “gotten around to hearing” all the telephone calls because the government never provided them, they would have readily discovered, well before trial, that some of the recorded telephone calls were inadvertently missing had they only listened to the disks provided and/or compared those calls with the spreadsheet. Instead, the record is replete with evidence Mr. Claycomb simply failed to bother to listen to the tapes, despite the opportunities afforded him. This, and the fact he and his counsel did not discover missing telephone calls until the eve of trial, demonstrates a lack of diligence sufficient to support the district court’s denial of another continuance.
Next, we consider the likelihood a continuance, if granted, would accomplish the purpose underlying the party’s expressed need for the continuance. In this case, we agree with the government that it is highly unlikely Mr. Claycomb would have listened to the recordings in the event of yet another continuance, given his history of not availing himself of the many prior op *839 portunities to listen to them. While his counsel may have listened to them had a continuance been granted, that alone is insufficient, when compared with the other circumstances presented in this case, to establish an abuse of discretion by the district court in denying the motion for continuance.
Next, Mr. Claycomb did not move for a continuance until the day of the trial, and, in doing so, he did not specify the amount of time needed for such a continuance. The government argues that granting a continuance on the morning of the trial would have caused the court, jury, government, and its cooperating witnesses, who apparently traveled from Colorado, great inconvenience. As we have stated before, “any continuance granted practically on the eve of trial inevitably will disrupt the schedules of the court, the opposing party, and the witnesses who have been subpoenaed or who have voluntarily arranged their schedules to attend the trial,” as well as jurors. Id. We have also held that where the motion for continuance does not specify the amount of time needed to prepare adequately for trial, “the resulting uncertainty” is an additional inconvenience to the government and its witnesses. Id. at 1475-76. This case is no exception. Under the circumstances presented, it is apparent a continuance would have caused inconvenience to those involved in the trial.
Finally, with regard to the fourth factor, Mr. Claycomb must show “the need asserted for the continuance and the harm that [he] might suffer as a result of the district court’s denial of the continuance.” Id. at 1475. Here, as the government contends, Mr. Claycomb fails to demonstrate a need for a continuance or any harm caused by its denial because he has not asserted what he expects to discover in those recordings. Instead, on appeal, Mr. Claycomb merely contends the telephone recordings may contain exculpatory evidence, including possible instances where he “opposed numerous of the drug deals proposed by the other participants.... ” However, even if the missing recordings revealed his opposition to some drug deals, such conduct would not exculpate him from responsibility for those drug deals the evidence in the record overwhelmingly establishes he directed and for which he was convicted and sentenced. Given such overwhelming evidence, Mr. Claycomb has not explained how a continuance would have helped him prepare a defense, prepare for his own potential testimony, or investigate and prepare a challenge to the telephone recordings the government did use at trial, which he had full access to seven months in advance. We also note that at the time of the trial, when the district court considered the motion, the only reasons Mr. Claycomb’s counsel could muster for a continuance consisted of assertions that “[t]here might be something in there that I can use,” and “[m]y client would like to hear them to see if there’s anything in there I can use in his defense.” This is woefully insufficient to show the need asserted for a continuance and the harm one might suffer as a result of the district court’s denial of a continuance.
While we do not condone the government’s inadvertent failure to provide all of the telephone recordings to Mr. Claycomb, he has failed to show any material prejudice caused by the error or the denial of his motion for continuance. For all of the reasons stated, we conclude the district court did not act arbitrarily or unreasonably or otherwise abuse its discretion in denying the motion for continuance.
B. Golden Rule Violation
In his appeal, Mr. Claycomb also argues the government violated his Fifth Amendment right to due process when it “vouched for four of its critical witnesses *840 by obtaining testimony that they were adhering to ‘the golden rule’ ” to tell the truth. In support, Mr. Claycomb points out the government introduced into evidence each of their plea agreements containing provisions their cooperation would result in lesser sentences if the government determined they told the “truth.” While he concedes admitting plea agreements is permissible, he contends the government’s questions to witnesses about the “golden rule” implicitly suggested that it found their testimony truthful, causing impermissible prosecutorial vouching as to the truthfulness of those witnesses. According to Mr. Claycomb, such witness testimony on the “golden rule” misled the jury and prejudiced him because the case against him depended on the credibility of those witnesses. Because he did not object to the government’s questioning of the witnesses on the “golden rule,” he concedes the standard of review is for plain error but summarily contends he meets this standard because plain error occurred which prejudicially affected his substantial rights depriving him of a fair trial and seriously affected the fairness, integrity, and public reputation of his judicial proceeding.
As Mr. Claycomb acknowledges, he did not object to the admission of the government’s questions regarding the “golden rule,” so we review the issue of such admission for plain error. See United States v. Harlow, 444 F.3d 1255, 1261 (10th Cir.2006). To establish plain error, Mr. Clay-comb must show: (1) an error; (2) that is plain; (3) that affects substantial rights so the outcome of the trial would have been different without the error; and (4) that the error seriously affected the fairness, integrity, or public reputation of the judicial proceeding. See id. All of these requirements must be established before a defendant can meet his burden of establishing plain error.
Having set out our standard of review, we turn to the legal principles involved in considering Mr. Claycomb’s vouching argument. Vouching errors are viewed “in light of the context of the entire proceeding, including the strength of any curative instructions and the closeness of the case.” Id. (citations omitted). We have said it is permissible for a prosecutor to introduce a witness’s plea agreement including a truthfulness provision and to discuss that provision to make sure the witness is aware of the consequences of failing to tell the truth and for the purpose of heading off any claim the witness’s testimony is suspect because of the plea agreement. See id. at 1262. “Use of the ‘truthfulness’ portions of plea agreements becomes impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness’ testimony.” Id. (internal quotation marks, citation, and alteration omitted).
In this case, it is clear the government only asked the witnesses to identify their plea agreements and the assistance to government or “truthfulness” provisions concerning a reduced sentence and to explain if they knew what the “golden rule” was. A review of their testimony does not in any way indicate the government vouched for the credibility of those witnesses or the veracity of their testimony— either explicitly or implicitly. Thus, we discern no error.
However, even if the government’s questions on the “golden rule” could be interpreted as vouching as to their credibility and constitute plain error, it is clear Mr. Claycomb has not demonstrated the error affected his substantial rights. Instead, a plethora of telephone recordings involving Mr. Claycomb, which he admits were provided to him seven months before trial and introduced into evidence, clearly *841 established his managerial role in the drug conspiracy at issue and the location and his possession of the 9mm machine gun.[1] Thus, even if plain error had occurred concerning the government’s vouching of witness testimony, Mr. Claycomb’s own telephone recordings overwhelmingly support his convictions. Thus, he has not shown, but for the alleged error, the outcome of the trial would have been different. Having made this determination, we need not address the fourth requirement of our plain error review, other than to note Mr. Clayeomb has also failed to establish the alleged error, if any, seriously affected the fairness, integrity, or public reputation of his judicial proceeding.
III. Conclusion
For the aforementioned reasons, we AFFIRM Mr. Claycomb’s convictions.

 This order and judgment is not binding precedent except under the doctrines of law of the *834 case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

. In addition, the government contends Mr. Claycomb’s statements to a law enforcement detective implicated him in the distribution of drugs and his possession of the 9mm machine gun, but it does not indicate where in the record such statements were introduced into evidence. Our review of the record establishes the detective, who testified at trial on the recording of Mr. Claycomb's telephone calls at the detention center, did not testify as to any statement made to him by Mr. Clay-comb. Therefore, we will not consider any such statements on appeal. It also contends three cooperating witnesses were not asked about the “golden rule," so that Mr. Clay-comb's "golden rule” argument should not pertain to their testimony on their working at his direction in the conspiracy or purchasing methamphetamine and/or cocaine from him. This is correct. Our review of the record establishes each of the cooperating witnesses testified regarding the government assistance provision of their plea agreements, and all indicated it required them to state the truth, but only four specifically testified regarding the "golden rule.” However, even if we did not consider any of the witnesses’ testimony, it makes no difference in the result, given the overwhelming inculpatory evidence relating to the tape recordings themselves.